## McKINLEY *v.* WHEELER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 233. Argued April 2, 1889.—Decided May 13, 1889.

A corporation, created under the laws of one of the States of the Union, all of whose members are citizens of the United States, is competent to locate, or join in the location of, a mining claim upon the public lands of the United States, in like manner as individual citizens.

Whether such a corporation will not be treated as one person, and as entitled to locate only to the extent permitted to a single individual, *quære*.

A corporation interested in mining may be represented by its officer or agent at any meeting of miners called together to frame rules and regulations in their mining district.

THIS was an action for the recovery of an undivided interest in a mine. Defendants demurred to the complaint and the demurrer was sustained and the action dismissed. Plaintiff sued out this writ of error. The case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiff in error. *Mr. Hugh Butler* was on the brief for same.

*Mr. T. M. Patterson* for defendants in error. *Mr. C. S. Thomas* was with him on the brief.

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action for the possession of an undivided half interest in a mining claim known as the Vallejo lode, in the mining district of Roaring Forks, in the county of Pitkin, Colorado.

The plaintiff derives whatever interest he possesses by purchase and conveyance from the Josephine Mining and Prospecting Company, a corporation organized and existing under the laws of Colorado, for the purpose of prospecting for valuable mineral deposits in the public domain of the United States in that State. The Vallejo lode was discovered and located

by that company and two persons named Charles Miller and James W. McGee, the location being in their joint name, one half interest for the benefit of Miller and McGee and the other half for the benefit of the members of the corporation. At the time of the discovery and location all the members of the corporation were citizens of the United States, and were severally and individually qualified and competent to enter upon the public domain and acquire title to mineral lands upon it by discovery and location.

The complaint, in addition to these facts, alleges that on the 11th of March, 1884, the plaintiff was and has since been the owner of an undivided half interest in the mining claim mentioned, which is described by metes and bounds as set forth in the original location certificate, and was then and has ever since been entitled to its possession; that on the 20th of October, 1884, the defendants entered upon the premises and wrongfully and unlawfully excluded the plaintiff therefrom, and have ever since thus excluded him, to his damage of one thousand dollars. He therefore prays judgment for the possession of an undivided half interest in the mining claim and for the damage alleged.

To this complaint, the material facts of which are set forth in two counts, the defendants demurred on several grounds, some of which are mere formal objections, but one of which is as follows: "Because the plaintiff bases his title or claim of ownership to an undivided one half of the said Vallejo lode mining claim upon a purchase and conveyance from the Josephine Mining Company, a locator of said claim, and that said company, whether a corporation or partnership, was and is incapable of originally locating a mining claim, in whole or in part, under the statutes of the United States or of the State of Colorado."

After argument the court sustained the demurrer, and entered judgment dismissing the action, with costs against the plaintiff, who has brought the case here on a writ of error.

As thus appears, the sole question presented for our determination is whether a corporation created under the laws of one of the States of the Union, all of whose members are citizens

of the United States, is competent to locate or join in the location of a mining claim upon the public lands of the United States, in like manner as individual citizens. The question must, of course, find its solution in the enactments of Congress.

Section 2319 of the Revised Statutes provides as follows:

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining-districts, so far as the same are applicable and not inconsistent with the laws of the United States."

It will be observed that no prohibition is here made against citizens of the United States uniting together for the occupation and purchase of public lands containing "valuable mineral deposits." Nothing is said of partnerships or associations or corporations; it is to citizens that the privilege is granted, and that they may unite themselves in such modes in all other pursuits was, as a matter of course, well known to those who framed as well as to those who passed the statute. There was no occasion for special reference to the subject to give sanction to these modes of uniting means to explore for mineral deposits and to develop them when discovered. Many branches of mining, and those which yield the largest returns, can be carried on only by deep excavations in the earth and the use of powerful machinery, requiring expenditures generally far beyond the means of single individuals. In lode mining especially such excavations extend in most cases hundreds of feet, in many cases thousands of feet into the earth, where, for successful working, the steam engine of great power is as essential an instrument as the pick and the shovel. It was expected, of course, that mining would continue after the passage of the act as before. No change in that respect was needed or asked for. The object of the act of May 10, 1872, 17 Stat. 91, c. 152, § 1, from which the provisions of § 2319 were carried into the

Revised Statutes, was "... promote the development of the mining resources of the United States." It is so expressed in its title, and such development is sought to be promoted by indicating the manner in which claims to mines can be established, and their extent, and by offering a title to the original discoverer or locator who should develop the mine discovered and located, or to his assigns.

At the present day, nearly all enterprises, for the prosecution of which large expenditures are required, are conducted by corporations. They occupy in such cases almost all branches of industry, and prosecute them by means of the united capital of their members with increased success. In many States they are formed under general laws, by a very simple proceeding;— by an instrument signed by the proposed members agreeing to thus unite themselves, stating their number, the object of their incorporation, the proposed capital, the number of shares, the period of duration and the officers under whose direction their business is to be conducted. Such a document being acknowledged by the parties and filed in certain designated offices, a corporation is created. The facility with which they may be thus formed, and the convenience of thus associating a number of persons for business, have led to an enormous increase of their number. They are little more than aggregations of individuals united for some legitimate business, acting as a single body, with the power of succession in its members without dissolution. We think, therefore, that it would be a forced construction of the language of the section in question, if, because no special reference is made to corporations, a resort to that mode of uniting interests by different citizens was to be deemed prohibited. There is nothing in the nature of the grant or privilege conferred which would impose such a limitation. It is in that respect unlike grants of land for homesteads and settlement, indicating in such cases that the grant is intended only for individual citizens.

The development of the mineral wealth of the country is promoted, instead of retarded, by allowing miners thus to unite their means. This is evident from the fact that so soon as individual miners find the necessity of obtaining powerful

machinery to develop their mines, a corporation is formed by
them; and it is well known that a very large portion of the
patents for mining lands has been issued to corporations.

If we turn now to other provisions of the Revised Statutes
we find that the conclusion which we have reached is justified
by their language.   Section 2321 provides as follows:

"Proof of citizenship, under this chapter, may consist, in the
case of an individual, of his own affidavit thereof; in the case of
an association of persons unincorporated, of the affidavit of
their authorized agent, made on his own knowledge, or upon
information and belief; and in the case of a corporation
organized under the laws of the United States, or of any
State or Territory thereof, by the filing of a certified copy of
their charter or certificate of incorporation."

Again, § 2325, in stating the manner and conditions under
which a patent for a mining claim may be obtained, provides
as follows:

"A patent for any land claimed and located for valuable
deposits may be obtained in the following manner:   Any per-
son, association, or corporation authorized to locate a claim
under this chapter, having claimed and located a piece of land
for such purposes, who has or have complied with the terms
of this chapter, may file in the proper land office an applica-
tion for a patent, under oath, showing such compliance," etc.

It will be thus seen that the statute itself assumes, what one
would naturally infer without reference to it, that citizens of
the United States are permitted to enjoy the privilege which
is granted to them in their individual capacity, though they
may unite themselves into an association or corporation.

The doctrine is well established that rights with respect to
property held by citizens are not lost because they unite them-
selves into corporate bodies.   They are subsequently as able
to invoke the law for the enforcement of their rights as pre-
viously, the court in such cases looking through the name in
order to protect those whom the name represents.   We have
an illustration of this, as applied to corporations, in the con-
struction given to the clause of the Constitution which extends
the judicial power of the United States to controversies be-

tween citizens of the States and aliens, and between citizens of different States.

In *Bank of the United States* v. *Deveaux,* 5 Cranch, 61, 87, the question arose whether a corporation composed of citizens of one State could sue in the Circuit Court of the United States a citizen of another State, and it was answered in the affirmative. In deciding the question, the court, speaking by Chief Justice Marshall, said: "However true the fact may be, that the tribunals of the States will administer justice as impartially as those of the nation, to parties of every description, it is not less true that the Constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between aliens and a citizen, or between citizens of different States. Aliens, or citizens of different States, are not less susceptible of these apprehensions, nor can they be supposed to be less the objects of constitutional provision, because they are allowed to sue by a corporate name. That name, indeed, cannot be an alien or a citizen; but the persons whom it represents may be the one or the other; and the controversy is, in fact and in law, between those persons suing in their corporate character, by their corporate name, for a corporate right, and the individual against whom the suit may be instituted. Substantially and essentially the parties in such a case, where the members of the corporation are aliens, or citizens of a different State from the opposite party, come within the spirit and terms of the jurisdiction conferred by the Constitution on the national tribunals. Such has been the universal understanding on the subject. Repeatedly has this court decided causes between a corporation and an individual without feeling a doubt respecting its jurisdiction."

The doctrine of this case has been followed and is now the settled law in the courts of the United States. On the same principle, provisions of law, in terms applicable to persons, securing to them the enjoyment of their property, or affording means for its protection, are held to embrace private corporations. The construction given to the 6th article of the defini-

tive treaty of peace of 1783 between Great Britain and the United States illustrates this. 8 Stat. 83. That article provided that there should be "no future confiscations made, nor any prosecutions commenced against any person or persons for, or by reason of, the part which he or they may have taken in the present war; and that no person shall, on that account, suffer any future lost or damage either in his person, liberty, or property." An English corporation held in Vermont certain lands granted to it before the Revolution, and the legislature of that State undertook to confiscate them and give them to the town where they were situated. The English corporation claimed the benefit of this article, and recovered the property against the contention that the treaty applied only to natural persons, and could not embrace corporations because they were not persons who could take part in the war, or could be considered British subjects, this court, speaking by Mr. Justice Washington, observing that the argument proceeded upon an incorrect view of the subject, and referring to the case of the *Bank of the United States* v. *Deveaux*, to show that the court, when necessary, will look beyond the name of a corporation to the individuals whom it represents. *Society for the Propagation of the Gospel* v. *New Haven*, 8 Wheat. 464, 491. Many other illustrations of the doctrine might be cited.

We are of opinion that the same rule of construction should control in this case, and that, in accordance with it, § 2319 of the Revised Statutes must be held not to preclude a private corporation formed under the laws of a State, whose members are citizens of the United States, from locating a mining claim on the public lands of the United States. There may be some question raised as to the extent of a claim which a corporation may be permitted to locate: as an original discoverer. It may perhaps be treated as one person and entitled to locate only to the extent permitted to a single individual. That question, however, is not before us and does not call for an expression of opinion.

The objection to this construction arising from the fact that the section gives force, in the location of claims, to the rules and customs of miners, so far as applicable, when not in con-

flict with the laws of the United States, does not strike us as of great weight. A corporation interested in mining may be represented by an officer or agent, at any meeting of miners called together to frame such rules and regulations in their mining district. Corporations engaged in other business are constantly represented in this way at meetings called in relation to matters in which they are interested. There is nothing in the nature of mining to prevent such a representation of a corporation when rules to control the acquisition and development of mines are to be considered and settled.

It follows that the judgment of the court below must be

*Reversed, and the cause remanded, with directions to overrule the demurrer of the defendants, and to take further proceedings in accordance with this opinion.*