HALL SAFE & LOCK CO. et al. v. HERRING–HALL–MARVIN SAFE CO.

(Circuit Court of Appeals, Seventh Circuit. January 11, 1906.)

No. 1,192.

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION.

Defendant's predecessors in business for many years were the Chicago representatives of Hall's Safe & Lock Company and of complainant, its successor in business, and at all times kept conspicuously displayed at their store and on their stationery the words "Hall's Safe" and the trade-name "Hall," as required by their contracts. Later defendant corporation was organized under the name "Hall Safe & Lock Company," took over the business, and continued the same signs and displays, but terminated the contracts with complainant and engaged in the sale of safes of another manufacture. There was no person by the name of Hall connected with the company. *Held*, that such action tended to deceive the public and injure complainant by using the reputation acquired by its safes for selling those of a competing manufacturer, and constituted unfair competition which entitled complainant to an injunction.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 82.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. SAME—USE OF NAME—ESTOPPEL BY SALE OF BUSINESS AND GOOD WILL.

One Hall and his sons established a successful business in the manufacture and sale of safes, which became well known as Hall's safes. Later they organized in corporate form as Hall's Safe & Lock Company and continued and increased the business, until it was sold by the corporation to complainant's predecessor; the instrument of sale expressly conveying its trade-marks, trade rights, and good will. The Halls, who were sons of the original founder, owned practically all of the stock of the selling corporation, and by the sale became the controlling stockholders of the purchasing corporation and its principal officers for some years, during all of which time it continued to use the name "Hall's Safes" on its product. They then severed their connection with it and organized a new corporation under the name "Hall's Safe Company" and engaged in the manufacture and sale of safes marked with such name. *Held*, that they were estopped by the sale of the business and good will of Hall's Safe & Lock Company, which, although made in the corporate name, was negotiated by them and of which they were individually the chief beneficiaries, from using the name Hall in connection with a competing business to the injury of the purchaser, and that such use constituted unfair competition.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 84.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The appellant Hall Safe & Lock Company was the complainant below in a bill filed against the appellee, Herring-Hall-Marvin Safe Company, to restrain the use of the name "Hall" in advertisements and otherwise, as descriptive of its business and of the safes manufactured and sold by the appellee. This appeal, however, is from a decree entered under a cross-bill filed by the appellee for like relief against the appellants, which restrains Hall Safe & Lock Company and James W. Donnell "from carrying on the safe and vault business in the name of 'Hall Safe & Lock Company,' or any name of which the name 'Hall' is a part, and from marking their safes with any name of which the name 'Hall' is a part, or from advertising or from offering for sale safes or vaults as 'Hall's Safe,' or by any name of which the name 'Hall' is a part, except or unless the safe so offered shall have been made or manufactured by the original Hall Safe & Lock Company of Ohio, or its successors, the Herring-Hall-Marvin Company, the receivers thereof, or the Herring-Hall-Marvin Safe Company." The original suit by the Hall Safe & Lock Company was commenced in the superior court of Cook county and was removed to the Circuit Court of the United States; the Herring-Hall-Marvin Safe Company, defendant therein, being a New Jersey corporation. The defendant answered the bill and with leave of court filed a cross-bill, which made James W. Donnell, president of the complainant corporation, defendant therein. Upon issues joined, the cause was referred to a special master on application of the respective parties for an injunction pendente lite. The master filed a report, and subsequently the Circuit Court denied the injunction prayed for in the original bill and dismissed the bill and entered an order restraining the complainants therein, as cross-defendants, from the use of the name "Hall's Safe & Lock Company" pendente lite. Proofs were subsequently taken on the issues under the cross-bill and answers thereto, and, upon hearing, the decree was entered which makes such injunction permanent, and from which the present appeal is brought.

The facts involved are many and complicated, but a statement of ultimate facts is deemed sufficient for the purposes of this opinion. The origin of the business and manufacture of safes, which became known as "Hall's Safes," is thus stated in the original bill filed by the appellant Hall Safe & Lock Company, as follows: "Your orator further represents that Hall's safes were first manufactured by Joseph L. Hall at or near Cincinnati, Ohio, on or about the year 1854, and that since said time said Joseph L. Hall, or his sons, either individually, or as managers of corporations in which the personal or family name of Hall appeared, have been engaged in the manufacture of safes, and the name 'Hall' has, by reason of such long business experience, acquired and now enjoys the highest reputation in the safe business; that safes so manufactured and labeled are known to the trade and the public as safes of the highest type of construction, durability, efficiency, and character for the purposes for which safes are manufactured, to wit, the preservation from fire and theft of money and personal property of great value."

The business was instituted by Joseph L. Hall in 1847, and was carried on successfully as a copartnership in which the name "Hall" appeared until 1867, when the parties organized under the name of Hall Safe & Lock Company at Cincinnati. Joseph L. Hall was the managing member of the several partnerships and became principal owner and president of the corporation, and so continued until his death in 1889, and his executors were his widow and son and a son-in-law. The business of that corporation was continued until 1892, when it was sold to the Herring-Hall-Marvin Company, a New Jersey corporation, under an instrument conveying, in the following terms, "all and singular its manufacturing plant, machinery, tools, patterns, buildings, fixtures, leasehold interests, stock of safes and other merchandise, material manufactured, in manufacture and in process of manufacture, horses, wagons, vehicles, cartage plant and rigging, bills receivable, book accounts, moneys, debts, dues, books of accounts and other books, papers, office furniture, trade-marks, patent rights, trade rights, good will and all its property and

assets of every name and nature wheresoever situated, as the same exist at the time of the delivery of these presents." Also the following: "It is hereby expressly understood, covenanted and agreed that the business of Hall's Safe & Lock Company is purchased and taken over by the parties of the second part in all respects as a going concern." The appellee, Herring-Hall-Marvin Safe Company, is the successor in interest and title to the business, good will, and all rights derived through such conveyances. Edward C. Hall and the other heirs of Joseph L. Hall participated in the sale referred to of the Hall's Safe & Lock Company and became officers of the original purchasing company and so continued until 1896, and the word "Hall" was retained and kept prominently in use and view in the operations and product of the purchasing company at all times subsequent to such purchase.

When the business was so purchased it was extensive, and the "Hall Safes" and "Hall's Standard Safes" were extensively used and known in this country and abroad. Upon the sale of the Hall's Safe & Lock Company's assets, the purchaser paid $600,000 in cash and $700,000 in the capital stock of the purchasing company. The then capital stock of the Hall's Safe & Lock Company was $375,000, of which the Hall estate owned $320,000, and the Hall interest was controlling in the new company, embracing the offices of president, treasurer, and secretary. Other contracts of employment in the new company covenanted that they would not, while their services were retained in that corporation, engage in Ohio or New Jersey, or elsewhere east of the Mississippi, in the business of manufacturing or dealing in vaults or safes, or any business such as the Hall's Safe & Lock Company had theretofore carried on. The Halls severed their connection with the purchasing corporation in 1896, and proceeded to organize the Hall Safe Company, under the laws of Ohio, out of which litigation arose, and which is now pending on appeal in the Circuit Court of Appeals for the Sixth Circuit. The Hall Safe Company of Ohio are engaged in the manufacture of safes, and their product was sold by the appellant Hall Safe & Lock Company, of Illinois, until restrained by the injunctional order above mentioned. Since that time the business has been carried on under the name of "Donnell Safe Company," of which the appellant, James W. Donnell, is the principal constituent. The appellant Hall Safe & Lock Company was organized in Chicago in 1898, to take over and continue the business of A. L. Dean & Co., when that firm became financially embarrassed. A. L. Dean & Co. from 1886, up to the time of its failure, was the representative, successively, of the original Hall's Safe & Lock Company of Cincinnati and its successors in interest, including the appellee. The contracts of service of that firm covenanted that they would faithfully represent their principal and the goods manufactured by it, and keep the name prominently before the public, and that they would not represent rival interests. In their business place in Chicago, the terms "Hall" and "Hall's Safes" were at all times conspicuous in signs and about the building, while A. L. Dean & Co. were such representatives, and the same or similar signs have been retained as conspicuously under the operations of the appellant and of the Donnell Safe Company, as well.

Geo. P. Merrick and O. W. Hatch, for appellant.

Chas. H. Aldrich and Lawrence Maxwell, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The decree appealed from grants completely the injunctional relief sought in the cross-bill filed by the appellee. Neither the prior decree, dismissing for want of equity the bill of the appellant Hall Safe & Lock Company, nor the prior injunction, restraining that company from using its corporate name in carrying on the safe and vault business, are brought for review. It is substantially conceded—and in any view unquestionable—that the adoption and use by the appellants of the name Hall Safe & Lock Company was wrongful. The un-

disputed facts—of prior business relation between the parties to this controversy, of the use and recognized value of the name "Hall" applied to the appellee's product, and of the methods of appellants in displaying the name in their competitive business, after severing connection with the appellee—are equally conclusive of the right of the appellee to injunctional relief against both appellants for unfair competition. This decree, however, is exceedingly broad in terms, prohibiting advertisement, display, or sale of any safes or vaults as "Hall's Safes," or under the name of "Hall" in any form, unless made by the appellee. As the appellants are engaged in selling the products of the Ohio corporation, operating as the Hall Safe Company, and using the name of Hall upon its safes, the decree perpetually enjoins their continuance in the business of dealing in such products, either under the name of the manufacturer, or with the trade-name which accompanies the goods. The appellants are under no obligation, by contract or otherwise, to deal with the appellee or its products, or to abstain from dealing in safes of any make not tending to deceive the public and induce purchase as the appellee's manufacture.

Unless the rights of the appellee are exclusive, therefore, in the use of the trade-name "Hall," as applied to their safes and vaults—irrespective of the just limitations in its use on the part of the appellants, arising out of their prior trade relations with the appellee—it is obvious that the decree cannot be upheld without modification. So the issues for review are twofold: First, as to the means of unfair trade practiced by the appellants; and, second, the measure of the appellee's trade rights thus violated and injured. The evidence upon these issues is formidable in volume and various transactions enter into consideration of the second issue, but the facts which are deemed material for solution of both are established by the testimony without substantial dispute.

1. For the inquiry of the prior trade relations on the part of the appellants and the means employed in the prosecution of their rival business after severing such relation, it is sufficient to mention the uncontroverted facts, without needless details or comment, beyond reference to the well-settled doctrine of unfair competition in trade. As averred in their bill, filed in this action: The manufacture of safes, under the name of Hall's safes, commenced in Cincinnati, about 1854; the name "acquired the highest reputation in the safe business," and the safes so labeled are known to the trade and public as "of the highest type of construction, durability, efficiency and character"; and for more than 20 years the appellant Donnell has continuously sold safes so named, made by the successors of the original Hall. The facts are that the operations of the Halls were successively, an individual Hall, then several copartnerships, and finally from 1867 to 1892, under an incorporation of Hall's Safe & Lock Company; that in 1892 the entire assets and good will of that corporation (composed of the Hall family) was acquired by the predecessor in interest of the appellee, Herring-Hall-Marvin Safe Co.; that about 1880 the appellant Donnell became the business

representative in Chicago of Hall's Safe & Lock Company and was the sole agent up to 1886, when he formed a copartnership with one Dean, and thereafter his firm continued the agency for that corporation and its above-mentioned successors in the business until 1898, when the appellant corporation was organized by Donnell and such agency terminated; and that the copartnership agency referred to operated under an express contract requiring, among other things, prominence of the trade-name Hall in the business. It is established by the admissions of Donnell, in his testimony, that the name Hall Safe & Lock Company was adopted for the appellant corporation, with no member of the name of Hall and for the purpose of retaining the business which was attached, not only to the name of Hall, but to the original corporate name of the appellee's predecessor, Hall Safe & Lock Company, and to obtain the business mail which was often addressed in that name; also that it was the intention thereafter to deal with the later Ohio corporation, organized by the Hall family, called Hall's Safe Company. During the continuance of the agency for appellee's predecessors, the Donnell office and store displayed numerous signs bearing the names "Hall's Safe & Lock Company," "Hall's Safes," and the trade-name Hall was kept prominently in view therein and on safes and stationery, in conformity with their contract. These signs were kept in equal prominence, at least, under the new organization and rival business of the appellants, and in advertising matter; for instance, advertising "Hall's Safe & Lock Company" as the largest manufacturer of safes and vaults in the world; also that "The only safes made by the Halls are sold in Chicago at the old stand, 52-54 Wabash Avenue. Beware of imitations." The corporate name so assumed was changed when enjoined by the trial court, but not the other methods.

With the trade thus established by Donnell and associates, under their relations to the business and good will acquired by the appellee, the methods adopted by them, in carrying on the competing business, were unmistakably calculated to trade on the good will achieved for the safes which they had so long represented, under the name of "Hall" and "Hall's Safe & Lock Company." This course tended to deceive the public and injure the appellee in trade benefits, which were the legitimate fruit of the good will it had acquired and maintained. The doctrine of the uniform line of authorities protecting the injured party from such unfair competition is plainly applicable, and the injunction was rightly granted. That the appellants were bound to recognize the rightful use of the name Hall, as descriptive of their safes, and did recognize its value in trade, are unquestionable propositions; and their violation of the cardinal rules of fair dealing —in keeping up the old signs and the old prominence of "Hall" as the mark of excellence in the safes, with no evidence to bring home to the public notice that the safes offered were not the Hall safes theretofore sold by them as the appellee's product—is alike unquestionable, whether the appellee's right to the use of that name was exclusive, or was either shared by the new principal, the Ohio corporation, or claimed by it as a monopoly in the name rights. If the right to use the name were not exclusive, the appellants' conduct

would be equally wrongful, but in such event the terms of the injunction would require modification to meet such view.

2. The question, therefore, whether the appellee's rights in the name Hall, as applied to its safes, are exclusive, thus arises for review, under the scope of the decree. We do not understand from the brief or oral argument of counsel for appellants that it is contended that use of this trade-name by the appellee was without right —and certainly the rightful use is not questionable under the terms of the conveyance and the subsequent participation of the Hall family in such use—but the contention is that the right is not exclusive, and that the Hall family, at least, have unrestricted right to employ the name in their rival trade. In other words, the only issue is whether the conceded like use by the Ohio manufacturer, Hall's Safe Company, is legitimate. It must be determined as between the parties to this record, for the reason that the contention for modification of the decree rests solely on the assumed rightfulness of the manufacturer's adoption of the name, so that neither the fact that the Ohio corporation is not present as a party, nor the more embarrassing fact that litigation is pending between that corporation and the present appellee, involving the same issue, will justify evasion of the inquiry. The contention, however, on the part of the Ohio corporation is presented by the testimony of Edward C. Hall and William H. Hall, its president and vice president, respectively, and with their admissions of fact the solution is free from difficulty, as we view the evidence.

The Halls, father and sons, had established a successful business in the manufacture and sale of safes, then called and well known as Hall's safes, when they organized in corporate form, in 1867, as Hall's Safe & Lock Company. Under this organization the Halls conducted the business and greatly increased the output and reputation of the safes, under the same name, until 1892, when the assets and business, as a successful going concern, were sold to the Herring-Hall-Marvin Company, a consolidation of safe manufacturers. The instrument of sale conveyed all the property of the corporation and expressly mentioned "trade-marks" "trade rights," and "good will." In the selling corporation, the Hall family were not only the officers and managers, but owned all or substantially all the stock, and negotiated the sale. Through the sale they became controlling in interest in the purchasing corporation and were the managing officers—of the above-mentioned witnesses, one being president and the other treasurer. The evidence is convincing that the name of Hall was kept prominently in view of the trade and constantly associated with the product, notwithstanding its midway position in the combined names of the new corporation. The engagement of the Halls with this corporation bound them only during the term of their service to enter no rival business. After four years in the management, the above-mentioned witnesses retired from the corporation and were released from their service contract, subsequently organizing the new Ohio corporation—Hall's Safe Company—and resumed the business of manufacturing safes which they named Hall safes. The Herring-Hall-Marvin Company promptly brought suit to enjoin such use

·of the name, and the suit is pending on appeal in the Circuit Court of Appeals for the Sixth Circuit—delayed in its course through various ·causes without fault of either party.

The right of these succeeding Halls to enter the business and manufacture safes of the structure and quality thus undertaken, for any market, is not questioned. So their use of the name Hall in the connection stated was within their right, unless barred by contract or ·estoppel, or the use is deceptive and fraudulent. Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L Ed. 972. The general rule for which the appellants contend— ·that the family surname is "incapable of exclusive appropriation by any one, as against others of the same name who are using it le- .gitimately in their own business"—is too well settled to require citation or review of the authorities. But the exceptions above mentioned, which make the use illegitimate, are equally well settled, and we are of opinion that the general rule is not applicable to the trade- .name "Hall" thus applied to the product of the new corporation, and ·that the use was both fraudulent and in derogation of the rights ac- ·quired by the appellee under the conveyance by the original Hall corporation. The fact that such conveyance was not executed by the Halls as individuals cannot absolve them from the obligations of a ·contract, made in the corporate name, wherein they were individually the beneficiaries. As stated in McKinley v. Wheeler, 130 U. S. 630, ·636, 9 Sup. Ct. 638, 640, 32 L. Ed. 1048: "The court, when necessary, will look beyond the name of a corporation to the individuals whom it represents." See opinion of Judge Baker, speaking for this court, in Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co. et al. (decided October 3, 1905) 142 Fed. 157. The corporate form of the ·transfer will not be permitted "to distort or hide the truth" (Anthony v. American (Glucose Co., 146 N. Y. 407, 413, 41 N. E. 23) but a court of equity will treat the contract in conformity with its true meaning.

The organizers and owners of this new corporation were not only ·the Halls who managed the original business, who established and maintained the reputation of the Hall safes, but they personally negotiated the sale of that business and good will to the purchasing corporation, for a large price, and received (as stockholders) a large share of the proceeds; they became managers of the purchasing corporation and so continued for four years, maintaining and enlarging. the business and good will so acquired, in the product known as Hall safes; and, thus participating and profiting in the transfer of that valuable asset—which they have given to the selling corporation, through acquiescence, at least, in the use of the family name—their efforts to repossess themselves of its essence, destroying or impairing the value of the property rights granted to the purchaser, are plainly inequitable, and, as we believe, violative of their contract obligations.

In any view of the doctrine of unfair trade, we are of opinion that ·the appellee is entitled to protection against the sale by these appellants of safes so made and marked as Hall safes, as representatives ·of the so-called Hall's Safe Company, or otherwise. The recent de-

cision in Howe Scale Company v. Wyckoff, Seamans & Benedict, supra, is relied upon by the appellants for support of their contention that the Halls were not deprived of right to use the family surname by these transactions, but we are satisfied that the case is plainly distinguishable; that the contract elements above mentioned in the case at bar were not there present, and the decision was expressly grounded upon the absence of such obligations, together with the absence of deception or confusion in the use of the name Remington; and that the elements thus appearing in the present case are unmistakably recognized as excepted from the rule thus upheld.

Without reference to the question discussed in the briefs, whether the name Hall has been so long identified with the business as to acquire a secondary meaning, within the authorities cited, we are of opinion that the uses of the name upon the safes represented and sold by the appellants are plain violations of the doctrine of fair trade, and that the appellees are entitled to the protection granted by the decree of the Circuit Court.

The decree accordingly is affirmed.