SOUTHERN BELL TELEPHONE & TELE-
GRAPH CO. v. LOUISIANA PUBLIC
SERVICE COMMISSION et al.
No. 340.

District Court, E. D. Louisiana.
Aug. 26, 1936.

James C. Henriques, of New Orleans,
La., and E. D. Smith and John T. Goree,
both of Atlanta, Ga., for plaintiff.

Gaston L. Porterie, Atty. Gen., State
of Louisiana, Peyton R. Sandoz and James
P. O'Connor, Sp. Assts. to Atty. Gen.,
and William C. Dufour and Henry O'Con-
nor, both of New Orleans, La., for de-
fendants.

Before FOSTER and HUTCHESON,
Circuit Judges, and BORAH, District
Judge.

BORAH, District Judge.

Plaintiff, a New York corporation, con-
ducting a general telephone business in
the state of Louisiana, brings this its bill
of complaint against the Louisiana Pub-
lic Service Commission and the individ-
ual members thereof to enjoin the de-
fendants from enforcing or attempting to
enforce the provisions of Act No. 20 of
the Second Extraordinary Session of the
Legislature of Louisiana for the year 1934
and to enjoin the enforcement of two cer-
tain orders entered in the cause entitled
"Louisiana Public Service Commission v.
Southern Bell Telephone and Telegraph
Company, Inc., No. 2428 of the docket
of the Louisiana Public Service Commis-
sion," which orders direct plaintiff to pay
to the commission the sums of $9,128.63
and $4,097.66, and which orders it is al-
leged were issued under color of author-
ity claimed to be granted by the provi-
sions of the aforesaid act authorizing the
imposition of the cost of investigation up-
on the utility being investigated.

Upon the filing of the bill a temporary
restraining order was issued without no-
tice restraining the enforcement of the
statute and orders against the plaintiff be-
cause of the danger of irreparable in-
jury being done to plaintiff before the mat-
ter could be heard on notice. The cause
is now pending before a District Court

of three judges which was organized and convened to hear plaintiff's application for an interlocutory injunction.

The verified pleadings and affidavits filed herein show that plaintiff owns and operates a telephone system in the state of Louisiana furnishing intrastate and interstate telephone service, both toll and exchange, to the general public; that in order to properly conduct its business it has acquired and does own and use real estate and personal property in the state valued at more than $20,000,000, which property consists of buildings, poles, wires, cables, conduits, manholes, switchboards, and other telephone equipment, the vast majority of which could not be moved out of the state, and if required to be moved would be practically worthless except for its junk value.

In addition, plaintiff has connecting company contracts with forty-two individuals, copartnerships, and/or corporations operating telephone plants and furnishing telephone service, both toll and exchange, in the state of Louisiana. Of these forty-two contracts, twenty-seven are with individuals and/or copartnerships; the remaining fifteen cover telephone companies operated by corporations. Of the twenty-seven individuals or copartnerships, eleven own toll lines of their own and the balance connect directly with plaintiff's toll lines; and the character and kind of telephone service, exchange and toll, furnished by the individuals and copartnerships, is the same character and kind of telephone service, both toll and exchange, as is furnished by plaintiff in the state of Louisiana.

A history of the facts which gave rise to this controversy reveals that during the latter part of the year 1934 the Louisiana Public Service Commission issued an order requiring plaintiff to show cause why the telephone exchange rates in various towns and cities in the state of Louisiana should not be reduced; hearings were had in this proceeding which is known as case No. 2331 of the docket of the commission; and on March 2, 1935, an order was entered reducing the telephone exchange rates. Plaintiff promptly filed a suit in the state court contesting the order, and the cause was set down for hearing on May 25, 1935, and thereafter continued to August 8, 1935, at the request of the commission in order that it might be afforded an opportunity to offer certain evidence to rebut the evidence of plaintiff. In due course judgment was rendered annulling and setting aside the order, whereupon an appeal was taken by defendants to the Supreme Court of Louisiana where the matter is now pending.

Prior to the date of the filing of its suit in the state court contesting the order of March 2, 1935, plaintiff without admitting the constitutionality of Act No. 20 of the Second Extraordinary Session of 1934 or the legality of the orders rendered under said act paid to the commission the sum of $30,000 for the alleged purpose of being used in payment of expert fees and other matters. These payments were made before the decision of the case as a matter of policy on account of the insistent demands made upon plaintiff by the commission and its then attorney, and not because plaintiff believed they were due or collectible or that the act or the orders were constitutional, and upon making the last payment the defendants were duly informed that its orders directing plaintiff to pay money to it were null and void and that in the future plaintiff would make no more payments to the commission.

After its suit was filed in the state court and after the first hearing was had and the plaintiff had been put to its proof to show that the order reducing the rates was null, void, and confiscatory, the commission issued a citation directed to plaintiff ordering it to appear before the commission at such time and place as may hereafter be designated, and then and there show cause why its rates, charges, and practices for telephone service within the state should not be further investigated to determine the latest operating results within the state of Louisiana, etc. This order was issued on May 31, 1935, in proceeding No. 2428 of the docket of the commission, and the unchallenged proof shows that it was issued for the purpose of obtaining information which defendant thought would be helpful to it in defending its rate order, and that it then proceeded to employ experts and accountants and has subsequently sought to make plaintiff pay for these services as evidenced by the hereinafter referred to orders, though no services were ever had before the commission in this proceeding.

On September 14, 1935, without any notice or hearing being afforded to plain-

tiff, the commission rendered the following order:

"The Louisiana Public Service Commission having instituted and now being engaged in the above-styled investigation of the rates, charges and practices of the Southern Bell Telephone and Telegraph Company within the State of Louisiana, and the said investigation requiring the services of counsel, engineers, accountants and technical advisers, and Act No. 20 of the Second Extraordinary Session of the Legislature of Louisiana for 1934 requiring public utilities to pay the costs incurred in such investigations, it is

"Ordered, that the said Southern Bell Telephone and Telegraph Company, Inc., be and it is hereby directed to immediately pay to the Louisiana Public Service Commission the sum of nine thousand, one hundred and twenty-eight dollars and sixty-three cents ($9,128.63) covering balance due in connection with said expenses incurred during the months of June, July and August, 1935, as per detailed statement attached hereto, properly certified."

Divers amendatory orders thereafter issued from time to time extending the effective date of the order to June 25, 1936. On May 28, 1936, the commission again without notice or hearing to plaintiff rendered order No. 1725, which is couched in language identical with that found in order No. 1654, save as to the mandatory provision thereof, and which provides:

"Ordered, that the said Southern Bell Telephone and Telegraph Company, Inc., be and it is hereby directed to pay on or before June 25, 1936, to the Louisiana Public Service Commission the sum of four thousand and ninety-seven dollars and sixty-six cents ($4,097.66) covering assessments due in connection with said expenses incurred during the period from September 1, 1935 to May 1, 1936, as per detailed statements attached hereto, properly certified, said sums being in addition to amount covered by the Commission's Order No. 1654 of September 14, 1935."

The bill charges that these two orders directing plaintiff to pay to it the sums of $9,128.63 and $4,097.66 were issued under color of authority claimed to be granted by the provisions of Act No. 20 of the Second Extraordinary Session of the Legislature of Louisiana for the year 1934, and asserts that said act as well as the orders are respectively violative of the equal protection and due process clauses of the Fourteenth Amendment. It is further claimed that the statute is violative of section 16, article 3 of the Constitution of Louisiana for the year 1921.

Plaintiff contends that the statute here under review imposes a burden on corporations that is not imposed on individuals or copartnerships doing a like business, and to thus place a different and more onerous burden upon plaintiff because it is a corporation for the privilege of doing business in Louisiana is a denial to it of the equal protection of the laws guaranteed to it by the Fourteenth Amendment.

Act No. 20 of the Second Extraordinary Session of the Legislature of Louisiana for the year 1934 is set forth in its entirety in article 17 of the petition. The object of the act, as expressed by the title, is to impose upon "public service and public utilities corporations" the burden of paying the expenses incurred by the Louisiana Public Service Commission in examining the affairs of such corporations to enable the commission to fix and regulate the rates of such corporations; to provide for the employment and fees of engineers, consultants, etc., necessary to conduct such examinations, and payment thereof by the corporation examined; to provide the "kind of corporations which shall be governed by this Act." Section 1 provides that whenever the commission shall make an examination of the affairs of any "public service or public utilities corporation" for the purpose of fixing and regulating rates or services, all expenses incurred by the commission shall be paid by "the corporation" so examined. Section 2 provides that it is the duty of the commission "to certify to the corporation" being examined the amount of expenses incurred, whereupon "the corporation" shall pay the amount so certified to such person or persons thus employed. Section 3 provides that should "any company" fail or refuse to pay the amount of expenses certified after fifteen days or after final judgment where a rule has been taken to test the reasonableness and legality of the amount of expenses certified, then the commission "may revoke the certificate of authority of such company to do business until the full amount of same is paid." Section 4 provides: "That the provisions of this Act shall

apply to all kinds of public service and public utilities corporations doing business in this State, or applying for admission to do business, whose rates or service is, in whole or in part, subject to the regulation of the Louisiana Public Service Commission."

■ It would violate every principle of statutory construction to hold that this plain language really means that natural persons are within the intendment of the act. To attribute such a secret, hidden, and indirect purpose to those who passed the statute is, in effect, to charge the lawmakers with saying one thing and meaning another. Nothing said in Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973, justifies such a pronouncement. Nor would a construction that the act applies to natural persons save the act from unconstitutionality. There would still be a penalty enforceable against corporations and no penalty enforceable against natural persons because the latter possess no certificate of authority that could be revoked. Furthermore, a construction that this act applies to natural persons as well as corporations would be to construe the act to include a subject not in the title in violation of section 16 of article 3 of the Constitution of Louisiana for the year 1921. Harman & Stringfellow v. Legrande, 151 La. 253, 260, 91 So. 726; Verrett v. Savoie, 174 La. 844, 141 So. 854.

■ Holding as we do that the act applies solely to public service and public utility corporations, it follows that an unjust burden is placed upon plaintiff because it is a corporation, which burden is not placed upon natural persons engaged in the same identical business. As thus construed and applied, the statute violates the equal protection clause of the Fourteenth Amendment.

■ Even if the statute was constitutional, there is no power granted by said act to the commission to render any orders directing plaintiff to pay to it any sum of money whatsoever nor is any such power conferred upon it by the constitution and statutes of the state, consequently their enforcement would deprive plaintiff of property without due process of law. Louisiana Public Service Commission v. Morgan's Louisiana & Texas Railroad & Steamship Co., 264 U.S. 393, 44 S.Ct. 358, 68 L.Ed. 756.

■ The constitutional invalidity of the orders in controversy should be decreed for the further reason that the uncontroverted facts show that said demand for payment is for work which was not done for the purpose of being used in any investigation being made by the commission in proceedings pending before it, but was in fact done, if done at all, for the purpose of aiding the commission in sustaining in court an order already entered after investigation reducing the rates of plaintiff; that the amount demanded is unreasonable and excessive and includes sums to be paid for the benefit of others than the accountants and experts employed by the commission and includes sums greater than are to be actually received by the accountants and experts who have done the actual work involved.

In view of the foregoing, we deem it unnecessary to consider the further grounds of attack.

Let a decree be prepared and presented in accordance herewith.

HUTCHESON, Circuit Judge (dissenting).

I find myself unable to agree with the majority opinion, either in regard to the result arrived at, or the reasons advanced in support of it. The nature of the questions involved justifies, I think, a statement of my reasons. Boiled down, the controversy is over the validity of Act No. 20 of the Louisiana Legislature, Second Extraordinary Session 1934, requiring public service corporations to pay the expenses of rate examinations and two certificates of the Louisiana Public Service Commission purporting to have been issued to complainant under it.

On complainant's part it is insisted: (1) That the act discriminatorily applies to corporations when, at least as to telephone exchanges, there are individual operators in the state. (2) That the certificates are invalid, because directing the assessments to be paid to the commission instead of, as the statute provides, to the persons the commission employed. (3) That the certificates are invalid, because not true in fact and in law, in that (a) the expenses certified were not incurred in an examination of plaintiff's affairs for the purpose of fixing and regulating its rates, but in connection with a lawsuit over them; and (b) the amounts

certified as due the various persons named are false and excessive.

Respondents have moved to dismiss on the grounds: (1) That the Johnson Amendment, 28 U.S.C.A. § 41, withdrawing jurisdiction from the District Courts of orders affecting rates chargeable by public utilities, deprives the Federal District Court of jurisdiction. (2) That the Johnson Act aside, there is no jurisdiction in equity, because the act complained of in providing for a plenary suit to test the reasonableness and legality of the commission's orders and, for their suspension until finally adjudged valid, furnishes a complete and adequate remedy at law.

On the merits as to the act, respondents urge that it is not discriminatory, but equal in its terms: (a) Because in its intent and reach it includes all public services in the state, whether operated under corporate or company management; and (b) because if it can be limited in its application to public services operated under corporate management, it does not work a discrimination against complainant whose great size and state-wide ramifications present problems in the examination of its affairs for rate making wholly different from those presented by the very few and insignificant noncorporate exchanges.

On the merits as to the complaint against the orders, that they direct payment to the commission, instead of to the persons employed, respondents point out that the certificates have attached to them detailed statements of the amounts due and payable to each of the persons employed, that the statute provides that the corporation examined shall pay the amount so certified to those persons, and that complainant can completely satisfy the orders by doing so. They assert, therefore, that the point made against the orders is not a substantial one for equitable cognizance, but a mere quibbling pretext. Finally as to the claim that the certificates are false in fact, because concerned with expenses incurred not in an examination for the purpose of fixing and regulating rates, but in connection with court proceedings, and that the amounts due are falsely stated, respondents deny both of these claims and assert that they are prepared to and will show that the certificates are truly and lawfully made.

I agree with the majority that the Johnson Act invoked by respondents has no application to this case. The orders in question are, plainly not orders affecting rates chargeable by a public utility, jurisdiction over which is withdrawn by that act from the District Court.

I think it plain, however, that the provision in section 2 of the questioned statute,[1] for a plenary suit to test the reasonableness and legality of the certificates, furnishes a complete and adequate remedy at law and that suit in equity to enjoin may not be sustained. The suit provided for is a judicial one. It is not a mere continuation of administrative action, as in Porter v. Investors' Syndicate, 286 U. S. 461, 52 S.Ct. 617, 76 L.Ed. 1226. Neither is it a special suit limited to a particular tribunal, as was the case in City Bank Farmers' Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628. The provision for suit is general, and under it plaintiff, a nonresident, has its election to file in either the state or the federal court. MacMillan v. Railroad Commission (D.C.) 51 F.(2d) 400; Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Chicot County v. Sherwood, 148 U.S. 529, 13 S. Ct. 695, 37 L.Ed. 546.

If this were the majority, instead of merely a dissenting, opinion, this view, that no equitable case is presented, would make unnecessary any further statement of views. The majority opinion, however, has affirmed jurisdiction, and has discussed and decided all of the contentions made. This obliges the dissenter, if he would do a thorough job of dissenting, to take up in order and discuss them too.

First, then, I cannot at all agree with the majority that "it would violate every principle of statutory construction" to hold that noncorporately operated exchanges are

---

[1] "Provided, however, that should the corporation deem the amount of the expenses so certified to be unreasonable or contrary to the provisions of this Act, it may, within fifteen days after the receipt of such certificate, take a rule in a court of competent jurisdiction against the Louisiana Public Service Commission, to test the reasonableness and legality under this Act, of the amount of expenses certified to by the Louisiana Public Service Commission, which rule shall be tried by preference, and upon appeal shall be given preference in the Appellate Court, as provided by law for other State cases."

within the intendment of the act. With deference, I think the conclusion of the majority opinion is drawn from its unsound premise, that "to hold that the act should be construed to include in its terms all public utilities however owned and operated, would be to attribute a secret, hidden, and indirect purpose to ·the legislators." I do not think that such a purpose should be attributed to them. I do not think a holding that, since the character of the ownership, whether corporate or incorporate, was wholly immaterial to the ends the statute had in view, it should be assumed that the Legislature used the word "corporation" to present the characteristic, though not definitive, form under which public services were conducted in Louisiana, would impute any secret intention to them. If, in an endeavor to arrive at the just and reasonable construction of the act, we focus our minds, as we must assume the Legislature did, not upon words, but upon the problem with which the act had to deal, and if, in focusing, we see that with the exception of a very few exchanges, insignificant in number, and infinitesimal in size, substantially all of the telephone companies in Louisiana are in corporate form, and presumptively, since there is no evidence to the contrary, all other kinds of public service and public utilities are in that form, it seems to me it is much more reasonable to treat the word "corporation" as a characterization, rather than a definition. Such a construction does not, it seems to me, impute to ·the Legislature any "hidden, secret or indirect purpose." It merely gives effect to the principal apparent purpose of the Legislature to localize the costs of investigation. On the other hand the construction the majority opinion gives the act in overthrowing it necessarily imputes to the Legislature, I think, a secret, hidden, and indirect purpose to punitively and unconstitutionally discriminate.

The general principles of construction seem to me to support the view of the statute for which respondents contend. It is uniformly held that unless the context requires a definitive, restrictive meaning wherever the word "person" is used in a statute, corporations will be held to be included. McKinley v. Wheeler, 130 U. S. 630, 9 S.Ct. 638, 32 L.Ed. 1048.

Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973, and the cases it cites, hold in effect that an act of this character will, wherever possible, that is, unless it clearly and plainly appears that a definite limitation is intended, and discrimination has thus resulted, be construed, not under canons of verbal nicety, but so as to give effect to its principal apparent purpose.

I think in the light · of that purpose, and of the evidence as to the overwhelmingly predominant character in Louisiana of the corporate form of public service, it is not an unreasonable, but a reasonable, construction of the act to hold that the words "company" and "corporation" were used in it as characterizations, and not as definitions, and that it includes within its terms all public services and utilities, whether operated under corporate or noncorporate form.

But I regard this as immaterial, for I think it perfectly plain that if the statute be construed as limited to corporations, it works no discrimination of which plaintiff can complain. The protection of the Fourteenth Amendment against unequal laws is directed against not theoretical, but real discrimination. Where burdens are laid on one whose actual conditions are greatly different from others not so burdened, he or it cannot claim discrimination because those others, dissimilarly situated, are not subject to them. Where, as here, there are a very few small exchanges, none operated in the name of, but some owned by individuals, having from 100 to 300 subscribers, it seems quite unreasonable to me to say that a statute and orders of this kind, charging the expenses of rate examination against the Southern Bell Telephone Company, having exchanges aggregating 126,000 subscribers, violates the Fourteenth Amendment because it does not in terms apply to these individually owned exchanges.

Constitutional law goes· upon the rule of right reason. It must be practically laid down and practically applied. Laws cannot be stricken down as discriminatory unless the discrimination plainly appears; that is, unless it appears that there is no basis on which reasonable minds could agree that classification was justly made. Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; Ft. Smith Lumber Co. v. Arkansas, 251 U.S. 532, 40 S.Ct. 304, 64 L.Ed. 396; Flor-

ida Central & P. R. Co. v. Reynolds, 183 U.S. 471, 22 S.Ct. 176, 46 L.Ed. 283.

If the law had in terms imposed the expenses of investigation on large concerns, with complicated systems of accounting and method like that of complainant, and had also in terms expressly exempted small individually owned exchanges, with a few subscribers, it would clearly not have been discriminatory. This kind of law is sustained on the ground that it really takes nothing from the utility, for while the charges are primarily paid by it, they are figured in the rate base and ultimately paid by the public. They are sustained on the ground that expenses of this kind, which public regulation makes necessary, ought to be borne, not by the general public, but by those who receive the benefit of the service. Washington Ry. & E. Co. v. District of Columbia, 64 App.D.C. 235, 77 F.(2d) 366. The Legislature might well believe that the expenses of investigating an exchange of 100 or 300 subscribers would be so infinitesimal as that the general public might properly absorb it. It seems quite clear to me, then, that the case is not controlled by Quaker City Cab Co. v. Com. of Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927, and Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204, but by White River Lumber Company v. State of Arkansas, 279 U.S. 692, 49 S.Ct. 457, 73 L.Ed. 903. If the Legislature of Arkansas could justly make special provision for the collection of back taxes against corporations without making those provisions against individuals, it would seem clear to me that the Legislation of Louisiana could require the payment by complainant of rate investigation charges without making the same provision as to the very few small individually owned telephone exchanges. If plaintiff's claim is that while its own situation is quite different from that of the individual owners, the law applies not only to it but to other corporately owned exchanges, some of which have as few or fewer subscribers than some of those individually owned, the short and sufficient answer is that plaintiff may not make such a claim. Under the Fourteenth Amendment each one affected by laws must complain for himself. If and when the commission undertakes to make a rate investigation in connection with any of the few small corporately owned exchanges, and charges them with the expenses of it, it will be time enough for the particular exchange affected to make its point that there is discrimination as between it and the individually owned exchanges. Plaintiff cannot use this supposititious situation and the wrongs supposed to result from it, to strike the statute down. In my opinion, the statute as to plaintiff is clearly valid, and plaintiff is subject to reasonable requirements under it.

Coming to the orders themselves, I cannot at all agree with the majority opinion that they may be enjoined because they require payment of the amounts called for in them to the commission, and not, as the statute provides, to the persons performing the work. While I agree that in this direction the orders do not comply with the statute, the point is, I think, a mere quibble, since the accounts of each person on whose behalf the orders are made, are attached to the orders and payment to them would, under the statute, be a complete compliance with both statute and orders.

Finally, as to the conclusion of the majority on the merits of the orders that they were wrongly issued, not for expenses incurred in connection with a rate investigation, but for those incurred in a court trial, and that they do not truly state the facts as to the expenses actually incurred, it seems to me that the conclusion is reached on wholly insufficient data.

If jurisdiction to examine into the merits of the order is to be taken, it seems to me that the conclusion on the merits ought to be reserved until after they have been heard.