SEABOARD AIR LINE RAILWAY COMPANY, a corporation, *Plaintiff in Error,* vs. A. W. WATSON, *Defendant in Error.*

137 So. 719.

En Banc.

Opinion filed November 12, 1931.

478

*W. J. Oven,* for Plaintiff in Error;

*J. Baxter Campbell* and *Watson & Taylor,* for Defendant in Error.

MATHEWS, Commissioner: A. W. Watson, hereinafter referred to as plaintiff, sued the Seaboard Air Line Railway Company, hereinafter referred to as defendant, in an action at law in the Circuit Court of Gadsden County, Florida, for damages sustained by the killing of livestock and breaking of wagon by the running of a train.

The declaration alleged that the defendant did carelessly and negligently run and operate its engine and train of cars across the public crossing at a high, rapid and excessive rate of speed and failed to give warning and notice by the blowing of the whistle, or otherwise, of the approach of the train; that the engine ran against and killed plaintiff's mules and damaged plaintiff's wagon.

The defendant pleaded (1) not guilty; (2) that plaintiff's servant failed to stop, look and listen at the railroad crossing to determine whether or not the train was then and there approaching, and that by reason of such failure the damage and injury sustained was caused solely by the negligence of plaintiff's servant; (3) that the plaintiff was barred from recovery because of the facts set forth in the second plea regardless of the failure of defendant to give warning and notice by the blowing of the whistle or otherwise. The fourth plea sets forth

substantially the same defense as the second, except that instead of being a plea in bar, it alleges contributory negligence on the part of the plaintiff through and by his servant. The fifth plea alleges contributory negligence on the part of the plaintiff, in that the plaintiff's servant in driving of the team when approaching the track of the defendant failed to observe and use reasonable and ordinary care to determine whether or not a train of the defendant was approaching said crossing before he, the said servant, attempted to drive thereon.

Plaintiff joined issue on each of the defendant's five pleas. The case was tried on March 22nd, 1929, and a verdict was rendered by the jury in favor of the plaintiff in the amount of $564.00. Judgment was entered accordingly in favor of the plaintiff and against the defendant.

A motion for new trial was filed and in due course denied, and the cause comes here on writ of error.

The specific acts of negligence, as charged in the declaration, are running the train across the public road crossing at a high, rapid and excessive rate of speed, and failure to give warning and notice by the blowing of the whistle or otherwise of the approach of the train.

The first, second and third assignments of error question the sufficiency of the evidence to sustain the verdict and judgment.

The evidence, without contradiction, showed the train was on schedule time and the evidence was sufficient to warrant the finding that the defendant's locomotive ran against plaintiff's mules and wagon, killing the mules and damaging the wagon.

"Under the issue of not guilty, the injury being shown to have been committed by the defendant in the running of its train, the presumption that it was through the negligence of the railroad that the injury was inflicted obtains against the defendant railroad, but such presump-

tion does not outweigh proofs, and it ceases when the company makes it to appear that its agents have exercised all ordinary and reasonable care and diligence. See Section 7051 (4964) Compiled General Laws of Florida 1927; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 So. 318; Jones v. Jacksonville Electric Co., 56 Fla. 452, 47 So. 1; Seaboard Air Line R. Co. v. Thompson, 57 Fla. 155, 48 So. 750; Seaboard Air Line Ry. vs. Moseley, 60 Fla. 186, 53 So. 718; Florida East Coast R. Co. v. Welch, 53 Fla. 145, 44 So. 250, 12 Ann. Cas. 210; Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 So. 235; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195." Seaboard Air Line Ry. Co. v. Myrick, 91 Fla. 918, 109 So. 193.

The question of negligence in the operation of a train at a crossing is one which must be resolved by consideration of many things, including condition of machinery and track in relation to speed, environment at point of accident, speed in relation to environment and signals of train's approach. Atlantic Coast Line R. Co. vs. Watkins, 97 Fla. 435, 121 So. 95.

The phrase "all ordinary and reasonable care" is susceptible of no hard and fast definition but varies with circumstances, and negligence in cases of this kind is failure to observe for the protection of another's interest such care, precaution and vigilance as the circumstances justly demand and the want of which causes injury. Atlantic Coast Line Railway vs. Watkins, supra.

There was testimony by the defendant's witnesses in this case as follows:

By Hays, fireman on the locomotive: "He (the engineer) did not blow his whistle again after blowing for the crossing."

Thomas, conductor of the train: "I am positive the crossing signal was blown. My recollection is that the whistle was being sounded as the brakes were applied in emergency. The brakes were applied. They responded

very promptly. I think we had seven cars and the rear car was still on the crossing when it stopped.''

Johnson, porter on the train: "It went about a train length from the time the brakes were put on until it came to a dead stop.''

Hays, fireman: "Air starts the automatic bell to ringing. It does not run all the time. You turn a valve on the bell. On the particular occasion the valve was turned about the time the whistle was being blown.''

Lee, the engineer, testified that he blew for the crossing at the signal post and later, just before the accident, sounded warning signals. He also testified that when he hit the wagon he was making between 30 and 35 miles per hour.

Witnesses for plaintiff testified, in rebuttal, as follows:

Woodberry: "The train did not blow at the post out there. I reckon it was fifty yards from the crossing when it did blow.''

Charlie Hays: "The train blowed and said 'toot, toot, toot' and it hit something. The toot and the hit was about the same time—they were right together. That was the first time the train blowed.''

It appears from the testimony of some of the witnesses that there was a curve in the railroad track before reaching the crossing; that there is a siding known as Douglas siding, some little distance from the crossing, at which there is a warehouse, also a little cut in approaching the crossing which may have obstructed the view.

Warning to persons upon the highway of the approach of a train at a railroad crossing should be appropriate or reasonably adequate to effect the purpose which its exercise is designed to accomplish. Atlantic Coast Line Ry. v. Watkins, supra.

We are unable to say, in view of the evidence, that the defendant company used all ordinary and reasonable care and diligence necessary to relieve it of liability.

The rights and obligations of a railroad company and travelers on public highways are reciprocal at the crossing of a railroad and public highway, but the railroad company's trains have the right-of-way, and persons on the highway should give precedence to the passing trains of the railroad at the crossings. It is therefore as much the duty of a person traveling upon the public highway who is about to cross a railroad track to use ordinary care and prudence to ascertain if a train is approaching upon the railroad track as it is the duty of the railroad company to warn by appropriate signal all persons who may be upon the public highway of the approach of a train about to cross the public highway. Seaboard Air Line Ry. v. Smith, supra; Seaboard Air Line Ry. v. Myrick, supra; Atlantic Coast Line Ry. v. Watkins, supra.

The standard of conduct on the part of a person approaching a railroad crossing to be applied in actions to recover for damages sustained by collision with a train at a railroad crossing is that when a person drives upon the railroad track, the driver of a vehicle must be sure whether a train is approaching, and if the driver of a vehicle cannot be sure otherwise whether a train is dangerously near, he must stop and get out of his vehicle. If he can otherwise assure himself whether or not a train is approaching by stopping, obviously he is not required to get out of the vehicle to observe whether or not a train is appraching a crossing. Atlantic Coast Line Ry. v. Watkins, supra.

Plaintiff's servant testified: "It was in the day-time. I was going for a load of wood. I was going down in the piney wood. I turned to my right to cross the railroad. I didn't have a chance to get off the wagon after I saw the train. I didn't see it until it was right on me. I tried to get across if I could. The mules were walking before I got to the track. I looked for the train and didn't see it as I drove on. I couldn't see far down the track on ac-

count of a warehouse and high bank. I could see a pretty good piece. Was not a hundred yards. The mules didn't have to be exactly right on the track before I could look up it. I could see kinda-cat-a-cornered before I got on it."

Under the evidence plaintiff's servant was himself guilty of negligence in driving the team of mules upon the crossing in front of the approaching train without exercising care and prudence to ascertain if the train was approaching.

Under the fourth assignment of error, it is contended that the verdict is excessive. The testimony places a maximum value of the two mules killed at $300.00 and $250.00 respectively, and the cost of repairing the wagon at $14.00, and it is clear beyond conviction that the jury did not take into consideration the negligence of plaintiff's servant in arriving at the amount of the verdict.

Where injury at a railroad crossing is caused solely by the negligence of a party injured, there can be no recovery, but if the injury was caused by running of the train, and both injured party and the employees of the company were at fault, there may be recovery, but damages will be reduced in proportion to contributory negligence. Section 7051 (4964) and Section 7052 (4965) Compiled General Laws of Florida 1927; Atlantic Coast Line Ry. v. Watkins, supra; Germak v. Florida East Coast Railway, 95 Fla. 991, 117 So. 391; Louisville & Nashville R. Co. v. Harrison, 84 Fla. 497, 94 So. 382; Tampa Electric Co. v. Bryant, 101 Fla. 204, 133 So. 887.

The remaining assignments of error relate to certain charges given and certain charges asked for by defendant, which were refused. These assignments question the constitutionality of Section 7051 (4964) Compiled General Laws of Florida 1927, as denying to the defendant due process of law and the equal protection of the law.

"In determining the legality and effect of a statutory regulation, the court should ascertain the legislative in-

tent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to, rather than violate, applicable provisions and principles of the State and Federal Constitutions, since it must be assumed that the Legislature intended the enactment to comport with the fundamental law. And a statute must be so construed, if fairly possible, as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score.'' Railroad Commissioners v. Florida East Coast Ry. Co., 77 Fla. 259, 81 So. 464.

The leading authority relied upon by defendant is Western & Atlantic Railroad Co. v. Henderson, 279 U. S. 639, 73 Law. Ed. 884, 49 Supreme Court Rep. 445. In that case, the Supreme Court of the United States had under consideration a statute similar to Section 7051 (4964) Compiled General Laws of Florida 1927, and it was there stated by the court that the jury in the court below was permitted to consider and weigh the presumption of the statutes as evidence as against opposing testimony, and the Supreme Court of the United States in that decision held that the statute of Georgia, as *construed by the Supreme Court of Georgia in that case* (italics ours) creates an inference that is given the effect of evidence to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate.

All that the statute does in this State in creating a presumption is thereby to cast upon the railroad company the burden of affirmatively showing that its agents exercised all ordinary and reasonable care and diligence, and here the statutory presumption ends. Seaboard Air Line Ry. v. Thompson, supra.

The application of a statute in a particular case may violate organic laws, but the statute as framed may not be unconstitutional when properly applied. Dutton Phosphate Company v. Priest, 67 Fla. 370, 65 So. 282.

The court below properly instructed the jury with regard to the presumption in this case.

In the case of J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 55 Law. Ed. 78, 32 L. R. A. (N. S.) 226, 31 Sup. Ct. Rep. 136, Ann. Cas. 1912-A, 463, 2 N. C. C. A. 243, a statute quite similar in its operation to the Florida statute was therein held constitutional, and this case was commented upon with approval in Western & A. R. Co. v. Henderson, supra.

In the Turnipseed case, it was held that the only legal effect of the inference was to cast upon the railroad company the duty of producing some evidence to the contrary. When that was done, the inference was at an end and the question of negligence was one for the jury upon all the evidence. It was there said that the statute did not fail in due process of law because it created a presumption of liability, since its operation was only to supply an inference of liability in the absence of other evidence contradicting such inference.

It was next contended that the statute is unconstitutional in not applying to busses in the same manner as to railroads. But a statute does not offend any provision of organic law merely because it may not in legal effect cover the entire field that is subject to similar legislation. Dutton Phosphate Co. vs. Priest, supra.

We have carefully examined the entire charge of the court below to the jury, also the instruction asked for by defendant which was refused. The charges given, in the main, accord with the law of this case, as above indicated, and it does not appear that the court erred in refusing the instruction asked for, which was denied.

A ground of liability appearing, and the damages awarded not being properly apportioned, it is ordered that if within thirty days the plaintiff below enters a remittitur of $300.00 as of the date of the judgment, the judgment shall stand affirmed for $264.00, otherwise the

judgment will stand reversed for a new trial. See St. Johns Electric Co. v. Lawler, 90 Fla. 188, 105 So. 818; S. U. Co. v. Davis, 90 Fla. 168, 105 So. 315; Tampa Electric Co. v. Bryant, supra; Louisville & Nashville R. Co. v. Henderson, supra.

Per Curiam.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929 (Extra Sess.) adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that if within thirty days the plaintiff enters a remittitur of $300.00 as of the date of the judgment the judgment shall stand affirmed for $264.00, otherwise the judgment will stand reversed for a new trial.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

TERRELL, J., dissenting: I think the judgment below should be reversed.