**W. J. FOWLER, et al., v. CHARLES G. TURNER, et al.**

26 So. (2nd) 792                              June Term, 1945
December 18, 1945                                     En Banc
Rehearing granted June 21, 1946

*Hall & Hedrick,* for appellants.

*John J. Lindsey, Allen Clements* and *Grady C. Harris,* for appellees.

CHAPMAN, C. J.:

The record in this case discloses that Dade County, Florida, has ten special tax school districts and the enrollment of pupils in attendance for the school year of 1944-1945 in the several districts thereof aggregated 41,908 pupils. The amount approved by the Budget Commission and the Board of Public Instruction for the support and maintenance and other costs of the public schools of Dade County for the year 1945-1946 was fixed at the total sum of $9,619,911.00. The assessed valuation of taxable property situated in Dade County for the year 1945, as estimated by a deputy Tax Assessor, is the sum of $551,240,480.00. The County has a population of 315,138 and covers an area of approximately 2207 square miles.

The assessed valuation of the taxable property in each of the ten special tax school districts and the enrollment of pupils in each district for the school year 1944-45 are viz:

| District No. | Assessed Valuation of taxable property in each district (Homesteads omitted) | Peak Enrollment of pupils in each district (5th month) |
| --- | --- | --- |
| 2 | $171,453,803.00 | 20,955 |
| 3 | 30,004,341.00 | 8,762 |
| 4 | 15,596,508.00 | 1,973 |
| 5 | 23,902,957.00 | 2,729 |
| 6 | 4,847,602.00 | 845 |
| 7 | 3,912,728.00 | 1,061 |
| 9 | 3,541,874.00 | 802 |
| 12 | 1,845,421.00 | 391 |
| 13 | 4,676,977.00 | 165 |
| 14 | 174,760,617.00 | 4,225 |

The bonded debt of the special tax school districts, with unexpended funds derived from the sale of bonds of the respective school districts of Dade County, are viz:

| | District Bonded Debt | Unexpended Balance |
| --- | --- | --- |
| District No. 2 | $6,269,000.00 | $1,568,723.67 |
| District No. 3 | 737,000.00 | None |
| District No. 4 | 416,000.00 | 238,202.70 |
| District No. 5 | 592,000.00 | None |
| District No. 6 | 73,000.00 | None |
| District No. 7 | 93,000.00 | None |
| District No. 9 | 29,000.00 | None |
| District No. 12 | No Bonds | |
| District No. 13 | 60,000.00 | None |
| District No. 14 | 666,000.00 | None |

Chapter 23226, Special Acts of 1945, Laws of Florida, provides for the consolidation of all the special tax school districts of Dade County into one or a single district, making the boundaries, after consolidation, co-extensive with Dade County. The election of three trustees for the consolidated District No. 1 is provided for, and the terms of the Act make the single District primarily liable for all the bonds and other obligations of the ten special tax school districts so consolidated. The Act is as follows:

"AN ACT Relating to and providing for the Consolidation of All the School Districts of Dade County Into One School District and making the Boundaries of said Consolidated District Co-extensive with Dade County and Providing for a Referendum Election to Determine When and if Same Shall take Effect.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"Section 1. All school districts of Dade County shall be consolidated into one such district to be known as 'School District No. 1' and the boundaries of said 'District No. 1' shall be co-extensive with the boundaries of the County and subject to all general law relative to school districts.

"Section 2. Upon the taking effect hereof, all property and assets of the several school districts shall become the property of the said 'School District No. 1' and said district shall be primarily liable for all the bonds and other obligations of the several districts so consolidated and subject to be taxed for the payment thereof; and such consolidation shall in no wise impair the security of any bonds then outstanding.

"Section 3. The three trustees for said 'School District No. 1' shall be elected by the qualified electors of said County at the time and place prescribed by or fixed pursuant to law but not more than one trustee shall come from any one district for which a county commissioner is provided for by law. The persons qualified to hold such office and receiving the greater number of votes cast for election of trustees shall serve for the ensuing two (2) years as trustees for said School District.

"Section 4. No tax that shall have been levied or assessed prior to the time when the provisions hereof shall be of full force and effect shall be hereby impaired.

"Section 5. Insofar as applicable and insofar as consistent with the provisions hereof and when not in conflict herewith the provisions of the general law of this State relating to school districts and to the consolidation of school districts shall be applicable to said 'School District No. 1' upon this Act taking final effect by the submissions and approval hereof on referendum to the qualified voters of the County.

"Section 6. The Board of Public Instruction of Dade County shall forthwith call and hold and canvass the returns of an election by the qualified electors of such county for their approval or disapproval hereof, which elections shall be after such County Board shall have published notice of the election once each week for four (4) successive weeks in some newspaper of general circulation throughout the county; and the ballot at said election shall in a short and simple form fairly present the matter to be voted on as determined by the Board of Public Instruction of said County.

"Section 7. In the event of the approval hereof upon a referendum election all of Dade County shall become one school district as of January 1st following the date of election and the trustees thereof shall take office on the first Tuesday after the Monday in January following said election.

"Section 8. This Act shall take effect upon it being approved by a majority of those qualified electors of the County voting at an election to be called and held by the County Board of Public Instruction for Dade County.

"Became a law without the Governor's approval.

"Filed in Office Secretary of State June 11, 1945."

Proceedings instituted in the Circuit Court of Dade County for the purpose of obtaining a declaratory decree, as provided by statute, as to the validity and constitutionality of the aforesaid Act—it being asserted by plaintiffs below, the appellants here, that the Act is invalid, void and unconstitutional and therefore unenforceable. Five questions agreed by counsel of record to be controlling are posed for adjudication by this Court.

The first question posed here for adjudication is viz: Do the provisions of Special Act, Chapter 23226, Laws of Florida, 1945, providing for the consolidation of the ten school districts in Dade County into one school district and further providing that upon the taking effect of said Act all property and assets of the several school districts shall become the property of the said school district No. 1, and said district shall be primarily liable for all bonds and other obligations of the several districts so consolidated and subject to be taxed

for the payment thereof, violate the following constitutional provisions:

"(A) Section 13, Article XII—prohibiting the diversion of school district funds;

"(B) Section 17, Article XII—requiring the levying of a special tax for the payment of interest and the principal of bonds within the special tax school district voting in favor of the issuance thereof;

"(c) Section 12, Declaration of Rights and the 5th and 14th Amendments of the Federal Constitution—prohibiting the taking of property without due process of law."

This Court in the consideration of a Statute presumes that the Legislature intended a valid and constitutional enactment. In deference to our legislative department of government this Court will uphold a statute against the constitutional attacks unless it is clearly made to appear beyond a reasonable doubt that the Act is unconstitutional. Where a statute is susceptible of two constructions, one of which leads to the conclusion that the same is void and the other that it is a valid Act, then the construction that will save the Act must be adopted. Hiers v. Mitchell, 95 Fla. 345, 116 So. 81.

The Constitution of Florida is not a grant of power to the Legislature, but only a limitation upon legislation, and, unless legislation be clearly contrary to some expressed or implied prohibition found in the Constitution, the courts are without authority to declare a legislative Act invalid. Jordan v. Duval, 68 Fla. 48, 66 So. 298. The public school fund of a county cannot be used to satisfy the obligations of a special school district, nor can the funds of the latter be used to satisfy the debts of the public schools of a county. The law considers and recognizes them as separate and distinct school funds. Funds of one special tax school district cannot be appropriated to the obligations of another special tax school district. Board of Public Instruction of Pinellas County v. Knight & Wall Co., 100 Fla. 1648, 132 So. 644.

It appears by the record that Special Tax School District No. 2 has a bonded debt of $6,269,000.00, with an unexpended balance of $1,568,723.67, while Tax School District No. 4 has a bonded debt of $416,000.00, with an unexpended balance of

$238,202.70; and School Tax District No. 12 has neither bonds outstanding nor money to its credit. Section 2 of the Act provides that "all property and assets of the several tax school districts shall become the property of the Tax School District No. 1 and said District shall be principally liable for all the bonds and other obligations of the several Districts so consolidated and subject to be taxed for the payment thereof . . . "

Section 10 of Article 12 of the Constitution grants to the Legislature the power to divide any county or counties into convenient school districts . . . authorizes the levying and collection of a district school tax for the exclusive use of public free schools *within the district* whenever a majority of the qualified electors thereof that pay a tax on real and personal property shall vote in favor of such a levy . . . Section 11 of Article 12 provides that "any incorporated town or city may constitute a school district." Section 11 of Article 10 also provides that the funds to be raised by Section 10 may be expended *within the district* where levied for buildings or repair of school houses, for the purchase of school libraries and text books, for salaries of teachers, or for other educational purposes, so that the distribution among all the schools of the district shall be equitable. Section 17 of Article 12 grants to the Legislature the power to provide by statute for special tax school districts to issue bonds for the exclusive use of public free schools *within any such special tax school district,* whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds . . . Section 13 of Article 12 provides that no law shall be enacted authorizing the diversion or the lending of any county or district school funds, or the appropriation of any part of the permanent or available school fund to any other than school purposes; nor shall the same or any part thereof be appropriated to or used for the support of any sectarian school.

It is our view that Section 2 of the Act offends cited provisions *supra* of our fundamental law because (1) discretionary power is conferred on the trustees to expend school funds raised by taxation in one special tax school district, in

whole or in part, in a school district other than where raised; (2) the property and assets of a special tax school district cannot be constitutionally transferred as attempted by Section 2; (3) funds raised by taxation, as authorized by a majority vote of the freeholders of a special tax school district, cannot constitutionally be transferred or diverted as here attempted; (4) the same constitutional limitation applies to the assets and property of a special tax school district acquired or obtained by taxation; (5) all the property of Dade County under Section 2 is subject to a tax for the retirement of bonds and payment of interest, contrary to pertinent provisions of Section 17 of Article 12; (6) the power to issue bonds by a special tax school district is vested by the Constitution in the qualified electors of the district who are freeholders; (7) the taxable property situated in one special tax district cannot be constitutionally taxed to retire the bonds of the other nine special tax school districts of Dade County.

Counsel for appellee contend that Section 2 of the Act can be sustained and upheld under the authority of State v. Goodgame, 91 Fla. 871, 108 So. 836; State v. City of Miami, 103 Fla. 54, 137 So. 261; State v. City of Tarpon Springs, 138 Fla. 649, 190 So. 19; State v. Couch, 139 Fla. 353, 190 So. 723, and authorities cited from other jurisdictions. Our study and analysis of our former holdings as cited and relied upon disclose that these decisions involved bonds and construction of charters of municipalities enacted by the Legislature under Section 8 of Article 8 of the Constitution and are inapplicable to the controversy here presented.

The second question posed for adjudication is viz: Does an Act of the Legislature consolidating all of the school districts in Dade County violate Sections 10 and 11 of Article 12 of the Florida Constitution, which provide for the division of a county into convenient school districts?

In light of the conclusion reached in disposing of question one *supra*, the necessity of ruling on questions two, three, four and five is questionable because the Act does not contain a saving clause. Among the objectives of the proposed Act is a consolidation of the several special tax school districts of Dade County where better schools can or may be had

or obtained at a reduced expenditure over existing conditions. For the procedure provided by statute to be observed and followed in holding and conducting elections for the consolidation of special tax school districts see Subsection (3) and divisions (a), (b), (c), (d), (e), (f), and (g) of Section 236.32, Fla. Stats. 1941 (FSA).

It is our conclusion that Chapter 23226, Special Acts of 1945, Laws of Florida, is invalid and unconstitutional and therefore unenforceable. The decree of the lower court is reversed for further proceedings in the lower court not inconsistent with the opinion herein expressed.

It is so ordered.

TERRELL, BROWN, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.

THOMAS, J.:

In an opinion written by the chief justice filed 1 December 1945, in which all members of the court concurred, it was decided that Chapter 23226, Laws of Florida, Special Acts of 1945, offended against Sections 13 and 17 of Article XII and Section 12 of the Declaration of Rights of the Constitution of Florida, also against the fifth and fourteenth amendments of the Constitution of the United States.

Upon re-examination of the record, after reargument pursuant to an order granting a rehearing, and upon reflection, it has occurred to this writer that if the decision is not at least modified the door may be closed to any rearrangement of special school districts until the constitution, at least of the State of Florida, is amended—that is, if redistricting is attempted where any one of the school districts of a given county has issued bonds or constructed buildings or accumulated funds. This conclusion seems inescapable because if all the districts are not free of debt, devoid of funds, and without school buildings and equipment, then a consolidation or rearrangement would give rise to the technical objections presented in this case, which in substance are that the surrender of moneys to the common fund or buildings to the common use or the consolidation of indebtedness would run afoul of constitutional inhibitions.

It should be said now that these comments are in no sense a retort to the views of the chief justice, for such would come with ill grace from this writer, who agreed with him, but that this is a sincere effort to ascertain if the act under assault can be held valid, as it is presumed to be, or if struck down whether it meets that fate only because of its unfortunate construction, thereby leaving the door ajar to further legislation authorizing consolidation and alteration of school districts in a manner harmonious with our organic law.

Discussed so much that it now appears trite is the importance of shunning any attempts to make fundamental law so rigid that it becomes an obstacle and an obstruction to the march of progress. I apprehend that as much danger may lurk in interpretations rendering constitutional provisions brittle as in those which would make them too limber, that there should be flexibility, although no elasticity. In no field for the operation of governmental activity is there more opportunity for real harm from an interpretation of the constitution too unyielding than in the school system, a condition evolving from an advancement in education itself and in transportation facilities.

Conceived for the purpose of assuring instruction to children everywhere, however remotely domiciled, school districts were provided so that even the most secluded community or settlement would have the advantage of a schoolhouse and a school-teacher, that this entity, the school district, would endure, its assets intact. Now the picture has changed considerably with the perfection of the highway and the advent of the school bus. The student who yesterday walked a mile to his schoolhouse, where all grades and all subjects were perhaps taught by a single teacher, today rides comfortably and safely in the same time to a school where he is instructed by persons specifically equipped to teach a certain grade or a certain subject. Focusing our attention on Florida, and especially on Miami and Miami Beach, the problem of adjusting educational facilities to shifting populations and augmented and concentrated real estate values become immediately manifest.

This brings us to the preface of the chief justice's pro-

nouncement. In it he pointed out that the assessed valuation of the ten districts of Dade County intended by the act to be consolidated into one district ranged from $1,800,000 to $174,-700,000; that the bonded debt varied from nothing (in one district) to $6,269,000; that the "unexpended balance" on hand varied from nothing (in seven districts) to $1,500,000; that the lowest number of pupils in any district was 165, the highest 20,995. In view of these disparities it was thought that Section 2 of the act, Chapter 23226, supra, could not be upheld because it provided that all assets of the ten districts would become the property of one, the consolidated district; that all debts would become its primary obligation.

Taken literally the schoolhouse and equipment of an original district would become the property of the new district; lands formerly in a district which had assumed no tax burden to retire bonds would become taxable for the obligations already incurred by other districts; districts which had no cash balance would participate in funds of other districts which had. Theoretically those districts surrendering to the common fund their cash assets, those taxable for debts they did not incur, those having structures and furnishings absorbed in the consolidated district would be deprived of their property without due process of law. (Section 12, Declaration of Rights of the Constitution of Florida; the fifth amendment and Section 1 of the fourteenth amendment of the Constitution of the United States.) Too, it might be argued, as indeed it has been here, that the legislature undertook by Section 2 of Chapter 23226, supra, to authorize diversion of "District School Funds" contrary to the provisions of Section 13 of Article XII of the Florida Constitution and that all the proceeds of bonds issued by the certain special tax school districts would not, because of their delivery to the common fund, be used exclusively for the public free schools within the districts issuing the bonds, contrary to Section 17 of Article XII of the Florida Constitution.

It seems to this writer, after mature study, that these objections are more apparent than real, more academic than practical. Patently if a district which has in it a school building and equipment is absorbed in another district, the

property is not physically moved from one to the other; obviously it only becomes available to students who have formerly resided without that district. By the same token, equipment and housing in the other districts with which it is incorporated become accessible to pupils residing in it.

A somewhat different situation presents itself with reference to cash balances of the various original districts, but even this condition does not seem an insurmountable obstacle to consolidation. It would be merely a matter of bookkeeping to insure that the unexpended balances of those districts boasting cash on hand should be credited on the indebtedness against property in the respective areas composing those districts.

A more serious problem arises with reference to levy of taxes in the whole district to pay the bonded debts in varying amounts of the individual districts composing it, or rather nine of them, and especially the one having no such obligations. We can easily understand the justness of the complaint of a property owner in a district unindebted, or indebted in a comparatively small amount, against assessing his property for its share of the combined debt of the other districts; but here again we see how he may well be protected against such a contingency. The original areas of the districts that had outstanding unpaid bonds could be taxed as if no consolidation had been effected, and the proceeds of each could be earmarked and allotted to the respective issues. This would be somewhat awkward, but after all, this is precisely what is being done prior to consolidation, and, in fact, we are not so much concerned with any clumsiness which may result, it being our duty to hold the act valid if we can and there being no responsibility on the part of the judiciary for the manner in which it was drafted. Thus would an individual property owner be safeguarded; thus would the bondholder escape any diminution of his security, for it would remain as it was, or was anticipated, at the time the bonds were issued. This would be no novel procedure, as will be realized from a study of cases dealing with taxation to discharge bonded debts where the boundaries of cities had been contracted.

If such a plan were followed, the property of a taxpayer in

a given district would not be taxed to discharge obligations which he had no voice in contracting, or to put it in constitutional language, he would not be deprived of his property without due process of law. If such a course were followed, bonds would not have been issued for any purpose save "exclusive use of public free schools within . . . such special tax school district," and to cap the discussion we think that such an application of the act would remove it from the category of laws violating Section 13 of Article XII, supra, because "authorizing the diversion or the lending of any . . . District School Funds . . . "

As was observed in the beginning, if no such general plan can be effectuated the school districts of a county may well become static, once they have erected buildings or incurred indebtedness or accumulated funds. This would be detrimental, if not ruinous, to an educational program because it would preclude the school authorities from keeping apace with progress. Applied to the very county from which this appeal has been brought to us, the result is immediately apparent. Three or four decades ago Miami Beach was but a mangrove swamp; Miami, a village. Miami Beach is now one of the wealthiest playgrounds in the world; Miami, a progressive and thriving metropolis. The need for a readjustment of districts so that the schools of the county will reap the full benefit of that vast geographical and economic change is clear. It now seems incongruous that districts created long before the county reached its present state of development could not be changed without transgressing the constitutional rights of the citizens and taxpayers of that county.

We think that the act may be put into effect practically, if somewhat awkwardly, so that the students will get full advantage of educational opportunities and so that the rights of taxpayers and citizens will be safeguarded.

This would seem harmonious with the pronouncement of this court by Mr. Justice Whitfield in Hunter v. Owens, Tax Assessor, 80 Fla. 812, 86 So. 839, where, among other statements, he said that "in testing the validity of a statute with reference to the facts and circumstances upon which it is to operate, the validity . . . does not depend upon the preponder-

ance of evidentiary considerations; but the statute stands unless it conclusively appears that there are or can be no conceivable circumstances upon which it can validly operate or that under no circumstances can it operate or be effective to accomplish the intended purpose, without violating organic rights." Of like effect was an expression of this court in Seaboard Air Line Ry. Co. v. Watson, 103 Fla. 477, 137 So. 719, where it was written that a statute may be unconstitutional when applied in a particular case, but constitutional when properly applied. In Ball et al. v. Branch, 154 Fla. 57, 16 So. (2nd) 524, Mr. Justice Terrell assembled the rules by which the court is governed in deciding the constitutionality of an act and enumerated them as follows: "(1) the presumption that it is valid, (2) that all doubts must be resolved in favor of its validity, (3) that if there is any reasonable theory upon which its validity can be upheld it is the duty of the courts to resolve that theory in favor of its validity, and (4) if confronted by two theories of interpretation one of which results in striking it down while the other results in upholding it, it is the duty of the court to adopt the latter interpretation if consistent with reason." It has been said by this court, too, that we should not construe or apply a statute to make it conflict with the constitution when a construction or application may as well be adopted giving it a contrary effect. In re Seven Barrels of Wine, 79 Fla. 1, 83 So. 627.

So it seems that by its application and by its operation the statute under assault may, if we reason along the course charted by these authorities, be held not to violate any constitutional rights of the persons who here complain and others in like situation. If any effort is made to apply it otherwise, they may seek redress when that occasion arises.

Appellants insist that the act as a whole violates Sections 10 and 11 of Article XII because it attempts to reduce the number of school districts in Dade County to one, although these provisions contemplate that there shall be more than one in each county. The first of the sections reads, "The Legislature *may* provide for the division of any county . . . into *convenient* school districts . . . "; the second, "Any incorporated town or city *may* constitute a School District."

(Italics supplied.) Use of the plural in the former, appellants urge, meant that there must be at least two districts, and this, so they continue, is emphasized by the provision that a city might constitute one district, for, to quote their brief, "the framers of the Constitution knew [1885] that in Florida a county would always be divided into urban and rural areas."

This argument is a bit too hypertechnical to lead to the conclusion that these sections (10 and 11) of Article XII contain a limitation upon the power of the legislature to authorize a county to constitute one school district.

The next challenge is directed at Section 3 of Chapter 23226 providing that three trustees shall be elected from the district, which is of course coextensive with the county, but that no two of them shall "come from any one district for which a county commissioner is provided for by law." The restriction, patently proposed to prevent all trustees from being resident in the most populous area of the dirtrict or county, is said by appellant to violate Section 10 of Article XII. There it is written that "the Legislature may provide for the division of any county ·. . . into convenient school districts; and for the election biennially of . . . trustees . . . " It is appellants' thought that any person in the district otherwise eligible for election could not be made ineligible by reason of the location of his domicile; that the restriction is not warranted because it "violates the majority rule," to quote the brief. But I cannot see that it does. It is true that only one person may "come from" any one commissioner's district, but there is no restriction on the expression of a choice by all the electors in the whole district. Obviously this provision was designed to give the entire territory better representation than if the trustees were elected "at large," in which event all of them might be, and probably would be, resident in a section where the number of voters was greatest.

The constitution does not grant power to the legislature, only limits it. It is difficult, if not impossible, to find expressed or implied limitation in the simple words just quoted, which mean in effect that the legislature *may* provide for the election of trustees. The only qualifications seem to be the

number of them, the frequency of the elections, the term of the office, and the supervisory capacity of the trustees chosen.

The last question which seems to merit discussion and decision—the fifth and only remaining question has been determined by what has been said in dealing with the others—is the one involving the charge that the act contravenes Section 21 of Article III of the constitution. Unquestionably the law is a local one, and no application for its passing was published, so its validity is dependent on compliance with the mandate that it be approved at an election "in the territory affected." This "territory affected," say appellees, is Dade County; this "territory affected," insist appellants, is the ten separate and distinct districts of Dade County.

I am well aware of the possibility that a majority of the voters in a given district may disapprove of the plan of consolidation and that the desire of a majority of electors in a relatively lightly populated district might be overwhelmed by the total vote of the entire county, but the principal concern is the education of the child; the plan to this end is county-wide; and the county as a unit is the "territory affected" as contemplated by this provision of the constitution. Although the decision in Nabb v. Andreu, 89 Fla. 414, 104 So. 591, is not precisely in point because of a difference in the set of facts, the principles there and here are so similar that the former is most persuasive to the conclusion that separate elections and approvals in all ten districts were not indispensable to the validity of the consolidation. Nothing in such a ruling seems shocking or suggests that a minority may thus be oppressed by a majority. When the high purpose, the education of youth, is regarded as the chief objective it is readily seen what mischief could result from a contrary decision. It could well be that this very purpose would be hampered, if not thwarted, because the over-all program for a large population did not meet with the approval of a comparatively small group in a thinly populated section.

Needless to say, the courts are as much concerned with the constitutional guarantees of the few as of the many, but if the provisions of the act in question are applied as we have suggested, these basic rights will not be jeopardized despite

the apprehensions of the citizens in the least populous or least indebted districts.

The writer has not dwelt so far on the provision, much complained about by appellants, with reference to the new district becoming "primarily liable for all the bonds and other obligations of the several districts so consolidated and subject to be taxed for the payment thereof . . . ". There is no desire to slight this important provision in the act; so this thread of the discussion should now be joined with the others before conclusion is reached. There was no attempt on the part of the Legislature to detail how this tax should be spread. It has already been remarked that the entire district should not be taxed indiscriminately to meet the obligations of the individual parts of it or, to use the other language of the act, to make the whole primarily liable for the total outstanding indebtedness in the strict sense of those words. Of course there will be a primary responsibility on the part of the new district to see that the obligations are retired—in the manner I have indicated. This provision of the act (Section 2) cannot be held constitutional if the language is taken literally, but if the law is made to operate as I have already pointed out, it will not then be unconstitutional.

When the consolidated district comes into being the former districts at once lose their identity. As a consequence, there must be a successor to which holders of outstanding bonds can look for the disbursement of interest and sinking funds, and for the levy of taxes to maintain and replenish those funds. This responsibility falls upon the new district, or its representatives, and again the requirements of the act will be followed and the inhibitions of the constitution obeyed if this mandate of the former is construed as a prime obligation to see to it that provision is made from time to time for the discharge of indebtedness of the original districts. And if this is done in such fashion no cause appears for just complaint either from creditor or debtor or taxpayer.

In fine, this writer is convinced that the act by its application and operation can be saved; that, as apprehended at the outset, the way to re-formation is not barred; that further legislation on the subject is not imperative.

546

Chief Justice CHAPMAN and Mr. Justice BUFORD adhere to the original opinion; while Messrs. Justices TERRELL, BROWN, ADAMS and SEBRING concur in the opinion of Mr. Justice THOMAS prepared after rehearing, so the judgment of the lower court determining Chapter 23226, Laws of Florida, Acts of 1945, to be constitutional and denying injunctive relief is affirmed and the declaratory findings and interpretations of the lower court otherwise, are modified to conform with this opinion.

TERRELL, BROWN, ADAMS and SEBRING, JJ., concur.

CHAPMAN, C. J., and BUFORD, J., dissent and adhere to the original opinion.