ERVIN, Justice.
We consider here whether we should grant or decline a writ of prohibition or a writ of quo warranto in cases that have been submitted to us by the parties for decision upon briefs and after oral argument.
The essential question submitted is the validity vel non of the Criminal Court of Record judgeships of Orange County, Florida, filled by W. Rogers Turner and Warren H. Edwards, Respondents.
The facts leading to the challenge of the judgeships are: Petitioner Monington was arrested and an information filed charging him with buying, receiving and concealing stolen property. His case was assigned to Respondent Turner for trial. Petitioner Monington seeks the writ of prohibition to prohibit Respondent W. Rogers Turner from continuing to serve as Criminal Court of Record Judge and preside at Petitioner’s trial.
Petitioner Monington alleges in his petition for the writ that Respondent is without jurisdiction to act as a judge of the Criminal Court of Record of Orange County because his office was not established in accordance with Article V, Section 9(1) of the Florida Constitution, F.S. A., which reads as follows:
“SECTION 9. Criminal Courts of Record.—
(1) ORGANIZATION AND Judges. The legislature may provide for the establishment of a criminal court of record in any county. Judges of criminal courts of record shall be elected for a term of four years by the qualified electors of the county, in the same man *874 ner as other state and county officials. Their compensation shall be fixed by law and paid by the county.
“In any county having a population in excess of 125,000 and not more than 250,000 according to the last decennial federal census, or census authorized by the legislature and paid for by the county, the legislature may provide for an additional judge of the criminal court of record for such county, provided that any law having for its purpose the creating of an additional judge of said court in such county shall not become effective unless ratified by a majority of the participating voters of such county in an election presenting the same for approval or rejection. In any county having a population of more than 250,000 according to such census, the legislature may, without referendum thereon, provide for one additional county judge for each additional 250,000 of population or major fraction thereof.”
According to Petitioner, the last sentence of that section means that an additional criminal court of record judgeship could be established in Orange County without an election only if the population at the last official census reached 375,001 (250,000 plus a major fraction thereof). Petitioner states that the population of Orange County at the time of the 1970 Federal Decennial Census was 344,700, and it has never exceeded 375,000. We take judicial notice this allegation as to Orange County’s population is correct.
The Relator, Edward J. Hanlon, Jr., makes similar contentions in his Petition for Quo Warranto, claiming that as predecessor judge to the purported election of Respondents to said judgeships pursuant to Chapter 63-908 (which he contends is invalid for reasons hereinafter discussed), he should be restored to office as the sole judge of the Criminal Court of Record of Orange County, Florida.
The question presented for our decision by the Petitions may be stated as follows:
Whether Respondents, or either of them, are unconstitutionally in office because the additional judgeship was established by an act without ratification by the voters of the county where the county’s population did not exceed 375,000 according to the latest decennial census.
We find Petitioners’ contentions to be without merit.
Pursuant to Chapter 3736, Laws of Florida, Acts of 1887, and subsequent statutes (which statutes have been brought forward in the revised statutes in F.S. Section 32.-01, F.S.A.), Orange County (along with a few other counties), had established therein its first or original criminal court of record judgeship. Section 24 of Article V of the 1885 State Constitution provided for the establishment of such criminal court of record courts “upon application of a majority of the registered voters in such * * * counties as the legislature may deem expedient.” In 1956, Section 24 of Article V was superseded by Section 9(1), quoted above, as it now appears in Article V of the State Constitution.
Chapter 63-908 was enacted in 1963 at a time when Orange County had a population of 263,540. It provided for a second or additional Criminal Court of Record Judge for Orange County. This act was not approved by a referendum vote of a majority of the electors of the County. However, at that time the county had 138,539 inhabitants above 125,000 plus 1, which represents a major fraction of 250,-000, or a total of 263,540 inhabitants.
According to the 1970 Federal Decennial Census, Orange County had a population of 344,700, or 219,700 over a population of 125,000. The 219,700 represents a major fraction of 250,000.
The requirement of Section 9(1), Article V, for a referendum as a predicate to creating an additional criminal court of record judgeship only applies to a county having a population in excess of 125,000 and not more than 250,000.
*875 Therefore the first sentence of the last paragraph of Section 9(1), Article V, standing alone would not entitle a county having more than 250,000 inhabitants to an additional criminal court of record judgeship, even with a referendum.
Whether such a county may have an additional criminal court of record judgeship at all turns upon the construction of the last sentence of Section 9(1) considered in relation to all the language of Section 9(1).
The last sentence of the section refers to a county having a population of more than 250,000. When this section is considered in connection with the preceding sentence authorizing an additional criminal court of record judgeship in a county having in excess of 125,000 but not more than 250,000 inhabitants with referendum approval, we conclude it has the effect of entitling a county that already has one criminal court of record judgeship to an additional judge where it has a population of 250,000 or major fraction thereof over the base of 125,000 plus one population, assuming, of course, the Legislature decides to establish it, which it may do without referendum.
It would be most incongruous and irrational for the Constitution to authorize a county with a population of 125,001 to have established therein by the Legislature a second judgeship and at the same time deny the Legislature the power to establish a second judgeship in a county with a population of 375,000. It must follow that since Section 9(1), read in its entirety, authorizes the Legislature to establish two criminal court of record judgeships in a county of more than 125,000 and less than 250,000 population, provided a majority of the electorate agree to the second judge, that the Legislature may establish a second judge in a county of more than 250,000 inhabitants without a referendum in order to provide equality of treatment among the several counties in providing sufficient judicial manpower for the dispatch of criminal cases therein.
Even if it may be argued Section 9(1) makes no provision for an additional criminal court of record judge in a county having only one such judge and a population of more than 250,000 inhabitants, but less than 375,001, this section does not prohibit, either expressly or by implication, the Legislature from creating an additional judgeship in such county. Thus, it' is obvious there is a hiatus in Section 9(1) which makes no provision for a second judge (but does- not-prohibit the creation of one) in a -county with a population of more than '250,000 but less than 375,001. This hiatiis or vacuum in Section 9(1), which the law, like nature, abhors, may be filled when the need becomes apparent to the Legislature. Compare State ex rel. Jones v. Wiseheart, Fla., 245 So.2d 849. The Legislature in its wisdom may close the interstice by creating the additional judgeship. Section 1 of Article V authorizes the Legislature to create new judge-ships when needed. Moreover, it is always to be remembered the Constitution is a limitation upon legislative power, not a grant. Fowler v. Turner, 157 Fla. 529, 26 So.2d 792. Therefore, since there is no prohibition against the creation of the additional judgeship under the related conditions and circumstances, Chapter 63-908 must stand.
Our construction of Section 9(1) in the light of Chapter 63-908 is restricted to the particular situation where a county has a population of more than 250,000 at the time the Legislature provides for the establishment of a second judgeship for it. After a second judgeship has been created in a county of more than 250,000 population, creation of any additional judges thereafter will be subject to the limitation that “the legislature may, without referendum thereon, provide for one additional county judge [meaning criminal court of record judge] for each additional 250,000 of population or major fraction thereof.”
*876 We note the words, “provide for one additional county judge” in the last sentence of Section 9(1), Article V. In the context employed, these words refer to an additional criminal court of record judge. See In re Advisory Opinion to the Governor, Fla., 96 So.2d 904.
We note that contentions have been made in this litigation concerning the derivation of title of Orange County Criminal Court of Record Judges Turner and Edwards, respectively, in the line of succession from the establishment of the first judgeship by Chapter 3736, Laws of Florida, Acts of 1887, or the second judgeship by Chapter 63--908, Laws of Florida, Acts of 1963, and the validity of their titles depending upon the derivation from the earlier or later statute. Under our view of the matter as hereinbefore enunciated, we conclude such considerations are immaterial and that both judges are entitled to continue in office.
The foregoing considered, the Petitions for Writ of Prohibition and Quo Warranto are denied.
It is so ordered.
ROBERTS, C. J„ and CARLTON, ADKINS and BOYD, JJ., concur.