## UNITED STATES AND THE SIOUX NATION *v.* NORTHWESTERN EXPRESS STAGE AND TRANSPORTATION COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 213. Submitted December 7, 1896. — Decided January 4, 1897.

A corporation organized under the laws of a State is a citizen of the United States within the meaning of that term as used in the act of March 3, 1891, c. 538, concerning claims arising from Indian depredations.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Howry* and *Mr. Alexander Porter Morse* for appellants.

*Mr. John B. Sanborn, Mr. Charles King* and *Mr. William B. King* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court

This appeal was taken from a judgment of the Court of Claims awarding to the appellees the sum of seven hundred

and fifty dollars upon the following state of facts found by the court, to wit:

"I. The claimant is and was at the time of the depredation hereinafter mentioned a corporation created under and by virtue of the laws of the State of Minnesota, and was transacting the business of a common carrier in conveying passengers and freight at the time referred to.

"II. The claimant during the year 1879 was engaged in carrying the mails and doing the business of a common carrier from Bismarck, Dakota, to Deadwood and the Black Hills upon the Territorial road from Bismarck to Cook station, in part through the Great Sioux reservation.

"III. On the 5th of February, 1879, near Cedar Canyon, property belonging to the claimant, consisting of four horses and their harness, was taken or destroyed by Indians of the defendant's tribe, the same being of the value of $750. The defendant Indians were at the time in amity with the United States, and the depredation was committed without just cause or provocation on the part of the claimant or its agents, and the property has not been returned or paid for. The claim has not been approved or allowed by the Secretary of the Interior."

The Court of Claims decided on the facts so found as a conclusion of law, that the claimant, by reason of its incorporation by a State of the Union, must be conclusively presumed to be a citizen of the United States for the purposes of this action.

The act of March 3, 1891, c. 538, 26 Stat. 851, is entitled "An act to provide for the adjudication and payment of claims arising from Indian depredations." By the first section of the act jurisdiction and authority was conferred upon the Court of Claims, in addition to the jurisdiction already possessed by the court, to inquire into and finally adjudicate "all claims for property of citizens of the United States" taken or destroyed by Indians, under circumstances specified in the act. The sole question presented by the appeal, therefore, is as to whether, under a proper construction of the act referred to, a corporation of a State for the purpose of the act is embraced within the designation "citizens of the United States."

The act was considered in *Johnson* v. *United States*, 160 U. S. 546, and we there held that a person who was not a citizen of the United States at the time of an alleged appropriation of his property by a tribe of Indians was not entitled to maintain an action in the Court of Claims under the act in question. There was not in that case, however, any assertion that the claimant was a citizen of a State as distinguished from a citizen of the United States. It was also declared that as the Court of Claims had no general jurisdiction over claims against the United States, it could take cognizance only of such matters as by the terms of the act of Congress were committed to it. Whilst undoubtedly in a purely technical and abstract sense citizenship of one of the States may not include citizenship of the United States, this does not meet the question which we are to construe, which is, what is the meaning of the words " citizens of the United States " as used in the statute. Unquestionably, in the general and common acceptation, a citizen of the State is considered as synonymous with citizen of the United States, and the one is therefore treated as expressive of the other. This flows from the fact that the one is normally and usually the other, and where such is not the case, it is purely exceptional and uncommon. These considerations give rise to an ambiguity which we must solve, not by reference to a mere abstract technicality, but by that cardinal rule which commands that we seek out and apply the evident purpose intended to be accomplished by the law-making power.

Congress has frequently in its legislation, as also the treaty-making power, used the words " citizens of the United States " in the broadest sense, and as embracing corporations created by state law. Thus, in section 2319 of the Revised Statutes, the right to purchase mineral deposits in the public lands was conferred upon " citizens of the United States and those who have declared their intention to become such." Section 2321, however, in regulating the mode by which the fact of citizenship should be established, provided that, " in the case of a corporation organized under the laws of the United States, or of any State or Territory thereof," the fact should be evidenced

" by the filing of a certified copy of their charter or certificate of incorporation." By the French Spoliation act of January 20, 1885, c. 25, 23 Stat. 283, authority was conferred on the Court of Claims to adjudicate upon certain claims of " citizens of the United States or their legal representatives." The Court of Claims, however, made no distinction in the exercise of jurisdiction between the claims of natural persons or of corporations. It entered upon no inquiry as to whether the stockholders of such corporations were composed in whole or in part of other than citizens of the United States. Congress appropriated for the payment of judgments thus rendered in favor of corporations. See 26 Stat. 905, 907, where appropriations were made in favor of the receiver of a corporation styled the Baltimore Insurance Company.

In various treaties entered into by the government, the term " citizens of the United States " has been used in the general sense already referred to. Thus in the treaty with Mexico relative to the adjustment of unsettled claims, 15 Stat. 679, 680, jurisdiction is granted to a commission to consider " all claims on the part of corporations, companies or private individuals, citizens of the United States, upon the government of the Mexican Republic." Similar language was also employed in the treaties with Venezuela, 16 Stat. 713, 714 ; with Peru, 16 Stat. 751, 752 ; with Great Britain, 17 Stat. 863, 867 ; and with France, 21 Stat. 673, 674.

In various decisions of this court, commencing with *Railroad Company* v. *Letson*, 2 How. 497, it has been adjudged that for the purpose of suing and being sued in the courts of the United States, a corporation of a State should be deemed a citizen of a State, and for the purposes of jurisdiction, it would be conclusively presumed that all the stockholders were citizens of the State, which, by its laws, created the corporation. *Muller* v. *Dows*, 94 U. S. 444, 445 ; *St. Louis & San Francisco Railway* v. *James*, 161 U. S. 545.

With this frequent use by Congress of the words " citizens of the United States " as embracing a corporation of a State, it remains only to be ascertained from the nature of the remedy proposed to be effected by the Indian depredation act

whether the words were used in the act in their general signification.

The act in question was a provision made by the United States as the guardian of the Indians, controlling as well their persons as their property, designed to make provision for the payment of the injuries committed by its wards. It certainly contemplated that citizens of the United States, even strictly speaking, should be made whole for the losses they might have sustained. But it is evident that cases might arise, where, in order to make restitution to citizens of the United States, the term in question would require a construction embracing Federal and state corporations. For, as the legal title to the property of a corporation is generally in the corporation, claims for damages to such property could not be presented in the names of the several stockholders. To deny relief to such a corporation would be practically therefore to refuse redress to citizens of the United States.

It must have been contemplated, therefore, that a corporation thus chartered by Congress was to be treated under the terms of the act herein referred to as a citizen of the United States for the purposes thereof; and the same reasoning which thus operates to bring a Federal corporation within the terms of the act, leads also to the necessity of including corporations of the several States of the Union.

It is true, as argued, that in some cases if corporations were embraced within the terms of the act, an alien who was a corporator might be benefited. But the ascertainment of the purposes of Congress by this argument of inconvenience on the one hand is completely destroyed by the overwhelming preponderance of inconvenience which would exist on the other; for, doubtless, whilst the alien corporator may be an exception, the corporator, who is both a citizen of the State and a citizen of the United States, is the rule. To follow the argument therefore would make the exception dominate and destroy the rule.

As the settled law was that for the purposes of Federal jurisdiction such corporations are conclusively presumed to be composed of citizens of the States, and as such construction was

manifestly frequently approved by the reënactment of provisions of the statutes conferring jurisdiction without an attempt to alter the presumption thus indulged in, it is proper to consider that such corporations were within the purview of words as used in the remedial act.

*Judgment affirmed.*