243 So.2d 573 (1971)
In re ADVISORY OPINION TO the GOVERNOR.
No. 40647.
Supreme Court of Florida.
January 21, 1971.
*574 Robert L. Shevin, Atty. Gen., Stuart L. Simon, Deputy Atty. Gen. and W. Robert Olive, Jr., and Ron Sabo, Asst. Attys. Gen., for Governor Reubin O'D. Askew.
Arthur J. England, Jr., Sp. Tax Counsel, Florida House of Representatives, for Richard A. Pettigrew.
John E. Mathews, Jr., Jacksonville, for Associated Industries of Florida, Inc.
J. McHenry Jones, Pensacola, for St. Regis Paper Co., Gulf Marine Supply Co., Florida Drum Service, Southern Chemical Storage and Transit Co., Owsley Lumber Co. and J.B. Hopkins, P.A.
Donald T. Senterfitt, of Akerman, Senterfitt, Eidson & Wharton, Orlando, for Florida Bankers Ass'n.
Richard H. Frank, Tampa, for Florida Education Ass'n.
PER CURIAM.
 Honorable Reubin O'D. Askew
 Governor of Florida
 The Capitol
 Tallahassee, Florida
Dear Governor:
We have the honor to acknowledge your communication of January 5, 1971 requesting our advice pursuant to Section 1(c), Article IV, Constitution of Florida, F.S.A. relating to certain executive powers and duties.
Omitting the formal parts, your letter reads as follows:
"Section 1(c) of Article IV of the Florida Constitution (1968) authorizes me to request your opinion as to the interpretation of any portion of the Constitution upon any question affecting my executive duties and powers. I hereby request your opinion as to the interpretation of Section 5 of Article VII of the Constitution, in order to resolve questions affecting my constitutional powers and duties under section 3(c) (1) of Article III (relating to calls of special sessions of the Florida Legislature), section 1(d) of Article VII (relating to fiscal management of the State), section 1(a) of Article IV (relating to my executive responsibilities), and section 1(e) of Article IV (relating to my responsibility to recommend measures in the public interest).
"I assumed the office of Governor of the State on January 5, 1971, in the midst of the State's fiscal period which commenced July 1, 1970, and which will end on June 30, 1971. By law, I serve as the chief budget officer of the State (Fla. Stat. Ann., ch. 216, § 216.023) and I am required to submit a recommended budget to the members of the Legislature on or before February 15, 1971 (Fla. Stat. Ann., ch. 216, § 216.162). This recommended budget must include, among other things, a statement showing my estimate of revenues for the State's fiscal year commencing July 1, 1971, a recommendation as to any additional sources of revenue required to meet appropriations, and a statement of the amount required by each state agency (Fla. Stat. Ann., ch. 216, § 216.162(2) (b)-(d)).
"Preliminary estimates of the State's fiscal administrators have indicated that the State will not have adequate revenue to meet the State's expenses in the next fiscal year, unless additional sources of revenue are developed. Faced with the necessity of proposing a budget by February 15 which will provide "for sufficient revenue to defray the expenses of the State" (Const. Art. VII, section 1(d)), one *575 of my first duties as Governor will be to exercise my authority under Article IV, section 1(a) of the Constitution, to require officials of the State (a) to provide me with a summary of anticipated revenues from existing sources, and (b) to estimate for me the amounts of additional revenue which will be required from new sources.
"A principal new source of revenue that I will propose is a tax on the net income of corporations. I believe, and have publicly stated, that such a revenue measure is in the public interest. Pursuant to the authority conferred on me in Article IV, section 1(e) of the Constitution, I will recommend such a measure to the Legislature at the earliest opportunity. However, there exists some uncertainty as to whether such a tax is prohibited by section 5 of Article VII of the Constitution. That section provides, in relevant part, that:
"`No tax upon * * * the income of residents or citizens of the State shall be levied by the State.'
"Since it is unclear whether corporations are to be considered "residents" or "citizens" of the State for this purpose, I cannot responsibly recommend to the Legislature, or predicate a State budget upon, a revenue measure which may be unconstitutional.
"If a corporate net income tax is constitutionally prohibited, then I will recommend "in the public interest" that the Legislature adopt and submit to the people an amendment to the Constitution. However, because of the notice and publication requirements for constitutional amendments (Art. XI, section 5 of the Constitution), I will be unable to provide for adequate revenue for the State's fiscal year commencing July 1, 1971, unless I promptly exercise my constitutional power (Const. Art. III, section 3(c) (1)) to convene a special session of the Legislature for the purpose of considering such a constitutional amendment. It may be noted that my convening proclamation must state with particularity the purpose for the special session.
"It is apparent from the foregoing that my initial duties as Governor bring into play a number of my constitutional powers and that, because the constitutionality of a corporate net income tax directly affects these duties, an immediate clarification of Article VII, section 5 of the Constitution is essential to the performance of my obligation to "take care that the laws be faithfully executed." (Const. Art. IV, section 1(a)).
"Accordingly, I hereby request your opinion on the following questions:
"1. Do the terms "residents" and "citizens" in Article VII, section 5 of the 1968 Florida Constitution mean only natural persons, as opposed to artificial entities, organizations or associations created by or pursuant to law?
"2. If your answer to the first question is in the negative, is the Legislature prohibited by Article VII, section 5 of the Constitution from imposing a tax upon the net income of corporations which are formed under the laws of the State of Florida and
"(a) which derive their entire income from sources within the State?
"(b) which derive their entire income from sources without the State of Florida?
"(c) which derive their income in part from sources within and in part from sources without the State of Florida?
"3. If your answer to the first question is in the negative, is the Legislature prohibited by that section of the Constitution from imposing a tax upon the net income of corporations which are formed under the laws of any state, territory, country or jurisdiction other than the State of Florida,
"(a) if such corporations derive their entire income from sources within the State?

*576 "(b) if such corporations derive their income in whole or in part from without the State but maintain a business situs or presence within the State?
"4. If your answer to the first question is in the negative and your answer to any part of the second or third question is also in the negative, is the Legislature prohibited by Article VII, section 5 of the Constitution from imposing a tax upon the net income of entities, organizations and associations (other than corporations) which are artificial in nature and which have been created by or pursuant to the laws of Florida or any other state, territory, country or other jurisdiction?"
Upon receiving your letter, the Justices, pursuant to Section 1(c), Article IV, Constitution of Florida (1968) and implementing rule 2.1(h), 32 F.S.A. entered an interlocutory order saying:
"His Excellency, the Governor of Florida, pursuant to Section 1(c) of Article IV of the Florida Constitution, has requested the opinion of the Justices of this Court on the answer to the following question:
"`Do the terms "residents" and "citizens" in Article VII, Section 5 of the 1968 Florida Constitution mean only natural persons, as opposed to artificial entities, organizations or associations created by or pursuant to law?', and other related questions.
"The Chief Executive has reminded this Court of the provision of Section 1(d) of Article VII relating to fiscal management of the State, Section 1(a) of Article IV relating to his executive responsibility, and Section 1(e) of Article IV relating to his constitutional responsibility to recommend measures in the public interest. He also informs us that pursuant to Florida Statutes, Chapter 216, Section 216.023, he is required by law to submit a recommended budget to the members of the Legislature on or before February 15, 1971 and referring us to Florida Statutes 216.162. He says that his recommended budget must include, among other things, a statement showing his estimate of revenues for the State's fiscal year commencing July 1, 1971, a recommendation as to any additional sources of revenue required to meet appropriations, and a statement of the amount required by each state agency. He informs us that he cannot perform his executive power and duty to see that the foregoing laws are enforced without a definition of the terms previously stated in his question.
"What the public knows generally, the Courts are presumed to know, and we take notice now of a substantial deficit between the requested budget and available revenue, which deficit, unless resolved in some appropriate manner, could result in fiscal chaos.
"There are many decisions of this Court prior to the adoption of the 1968 Constitution that would indicate we should exercise our discretion to refrain from answering the request. However, Section 1(c), Article IV, Constitution of 1968, enlarged to some extent the power of this Court to be of assistance, and our Rule 2.1(h) adopted in pursuant of such organic power has enabled us to treat such requests in somewhat the nature of an adversary proceeding by receiving briefs and arguments from interested persons.
"It has long been the policy of this Court to decline to express any opinion on the constitutionality vel non of a proposed legislative enactment prior to its adoption by the Legislature, and our judicial action in this case is not to be construed as a change at this time of that long standing policy. However, because of the matters aforementioned and the emergency of the situation, the Justices of this Court have unanimously exercised their discretion to receive, consider and answer this request under the procedure outlined by Florida Supreme Court Rule 2.1(h).
"It is, therefore, the interlocutory decision of all seven Justices of this Court, *577 for the reasons above stated, that this request is within the purview of our authority to assist, and we exercise our discretion to do so.
"It is, therefore, the order of the Court that under conditions hereinafter mentioned, interested persons may be heard through the filing of briefs and oral arguments by a limited number of such interested persons.
"In order that interested persons shall have standing to file briefs and be considered for oral argument, it is necessary that their intention to do so be filed with this Court not later than Monday, January 11, 1971, that any briefs be filed on or before January 14, 1971, and the cause is set for oral argument at 9:30 a.m. on Friday, January 15, 1971.
"It is so ordered."
Pursuant to such order, briefs were filed and oral argument heard.
As noted above, this advisory opinion is limited to an interpretation of Section 5 of Article VII of the 1968 Constitution. Insofar as here relevant, this section reads as follows:
"No tax upon estates or inheritances or upon the income of residents or citizens of the state shall be levied by the state, or under its authority, * * *"
As originally adopted in 1924 and added as Section 11 of Article IX of the 1885 Constitution, it provided that:
"No tax upon inheritances or upon the income of residents or citizens of this State shall be levied by the State of Florida, or under its authority, * * *"
It can thus be seen that the 1968 provision is identical with the 1924 provision insofar as the taxpayers to whom the provision is applicable are concerned. The only difference between the two provisions is that the 1924 prohibition was absolute; whereas, the 1968 prohibition is only as to the "excess of the aggregate of amounts which may be allowed to be credited upon or deducted from any similar tax levied by the United States or any State"  the same prohibition that has been in effect in this state as to inheritance taxes since 1930. That the 1968 provision was intended to apply to the same taxpayers as the 1924 version is supported by this analysis of the provision prepared by the Clerk of the House of Representatives:
"Section 5. Continues the prohibition upon income and inheritance taxes now in Sec. 11, Art. IX, but adds income taxes to estate and inheritance taxes that may be levied if credited upon or deductible from federal taxes (and adds taxes of other states)."
The fundamental object in construing a constitutional provision is, of course, to ascertain and give effect to the intentions of the framers and adopters. As noted in State ex rel. Dade County v. Dickinson, Fla. 1970, 230 So.2d 130, 135, "the object sought to be accomplished and the evils sought to be remedied should be kept in mind by the courts, and the provisions should be so interpreted as to accomplish, rather than to defeat such objects." The history of the adoption of the provision is also relevant to its construction. See Green v. State, Fla. 1964, 166 So.2d 585, 588. And since, as noted above, the 1924 and the 1968 provisions apply in terms to exactly the same taxpayers  "residents or citizens"  it is relevant to consider the historical circumstances in which the 1924 prohibition was adopted in this state.
An attempt by Congress to provide for an income tax through legislation alone, adopted in 1894, was ruled unconstitutional by the Supreme Court some nine months later. It was not until 1913 that the Sixteenth Amendment was adopted, giving Congress the right to levy an income tax. An income tax law was passed that same year. It assessed a tax at the modest rate *578 of one percent on incomes up to $20,000, and placed a surtax on incomes of more than $20,000. During World War I the rate was greatly increased; the normal tax ranged from six to twelve percent, and the surtax was as high as sixty-five percent on large incomes. The rate of the tax was lowered in 1924. And it was in that same year that Florida's voters overwhelmingly approved an amendment to our Constitution prohibiting the imposition of an income tax in this state. Newspaper comments on the proposed amendment spoke in general terms of the proposal as providing that an income tax and an inheritance tax "shall never be levied and collected in Florida" and revealed that the proposal was supported actively by such industry-oriented organizations as the State Bankers' Association, the Florida Development Board, and the State Chamber of Commerce. Arguments made in favor of the amendment were, among others, that Florida needs capital for development, that capital is sensitive, that money goes where it is well treated, and that "income and inheritance taxes were imposed by the Federal government in an emergency when big funds were needed quickly and they ought to be repealed."
In the excellent brief filed on behalf of the Speaker of the House of Representatives (from which were taken the above quotations), counsel observes that "throughout these commentaries, there is no hint that corporate entities were to be granted immunity from tax." However, we are struck by the fact that, although the federal income tax applied both to natural persons and to artificial persons such as corporations, the proposed amendment was invariably referred to as prohibiting the levy of "an income tax" or a "state income tax" without specifying that only natural-person taxpayers would benefit from the prohibition. It is noteworthy also that, as mentioned above, organizations that would presumably be in favor of attracting industry to come to our developing state actively supported the amendment. In this connection it should be remembered that in 1924, Florida was at the height of its "boom", with real estate prices skyrocketing and investors clamoring for options on property or purchasing it outright, sight unseen. The comments quoted above indicate that one of the most important objects of the income-tax prohibition was to create a climate favorable to capital investment in this state with the hope of continuing the boom-time economy. To assume that the income-tax prohibition was intended to encourage capital investments only when made by an individual and not when made by a group of individuals associated together as a partnership, association or corporation is unrealistic, to say the least. That this was not the intention may be inferred from the fact that, some six years later when the Florida real estate boom had "burst," along with the stock market, another constitutional amendment was adopted in an attempt to bolster our sagging economy by exempting industrial plants from all taxation for a period of fifteen years (but not beyond the year 1948). This was Section 12 of Article IX, 1885 Constitution, adopted in 1930.
In sum, when considered in the light of the object sought to be accomplished and the evils sought to be remedied, it cannot reasonably be concluded that the amendment in question was intended to benefit natural persons only. That it was intended to apply to artificial as well as natural persons has been assumed, apparently without question, throughout the years by the litigants in this court as well as by the members thereof. In Volusia County Kennel Club, Inc. v. Haggard, Fla. 1954, 73 So.2d 884, an attack was made upon the validity of a statute imposing an additional graduated tax upon dog tracks based upon daily gross receipts. In denying the petition for rehearing the court said:
"It was clearly held in the opinion to which the petition for rehearing is addressed that the tax in question was not *579 an income tax, and that if the Legislature intended it as an income tax, the statute would be a direct violation of Section 11, Article IX of the State Constitution.
"We did not discuss income tax cases for the obvious reason that such a tax in this state is prohibited by a special constitutional amendment, and such cases have no application in this case."
The majority opinion in the Volusia County Kennel Club case was authored by an eminent jurist, the late Mr. Justice Mathews, and concurred in by Justices Sebring and Roberts and Associate Justice Lewis. Justices Terrell, Thomas and Drew agreed that the tax in question was not an income tax (see 73 So.2d at page 893) but were of the opinion that it should be upheld as against the contention (sustained by a majority of the court) that it denied to the corporation the equal protection of the law.
Earlier, in City of Lakeland v. Amos, 1932, 106 Fla. 873, 143 So. 744, the question before the court was whether a statute imposing a tax upon "all corporations" receiving payment for electricity applied to a municipal corporation. In holding that the tax could validly be imposed against a municipality as well as other corporations the court noted that the tax "is in no sense a `tax * * * upon the income of residents or citizens of this State' within the terms or the intent of section 11, article 9, adopted in 1924 as a part of the Constitution of Florida."
The records relating to the adoption of the 1968 Constitution contain some references to the particular provision here in question. It is stated in the brief filed on behalf of Associated Industries of Florida, Inc., that the question of the removal of the prohibition against a corporate income tax was one of the questions suggested for consideration by the House of Representatives sitting as a Committee of the Whole during the revision session of 1967; however, no action was taken by the House in this respect. The brief filed on behalf of the Speaker of the House points out that the Senate approved the addition of the following sentence to Section 5 of Article IX:
"Notwithstanding this limitation the legislature may enact a state tax at a rate not to exceed 5% on the net income before federal income taxes of corporations."
but that this proposed addition, together with three other income tax proposals, all died in a House Committee.
It would seem, therefore, that at least some of the members of the Legislature were of the opinion that corporations as well as natural persons were entitled to the benefits of Section 5 of Article IX; otherwise, there would have been no necessity for the proposals mentioned in the briefs of the parties, referred to above.
When viewed in the light of this history, it seems clear that the 1924 as well as the 1968 constitutional provision were understood to prohibit any income tax whatsoever in this state  whether sought to be imposed against a natural person or a corporation. The use of the terms "residents" and "citizens" in the provision is entirely in accord with this understanding, since these terms have been held more often than not to apply to corporations as well as to natural persons.
Thus, the cases are legion holding that state statutes according a venue privilege to "residents" are applicable to corporations as well as to natural persons. See the cases collected in the annotation in 126 A.L.R. at page 1510 et seq. It is equally well settled that a corporation is a "citizen" of the state of its incorporation for the purpose of invoking the diversity-of-citizenship jurisdiction of a federal court  although this federal venue privilege may be waived. See Neirbo Co. v. Bethlehem Shipbuilding Corp. (1939) 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. This *580 fundamental rule that a corporation is a citizen, resident or inhabitant of the state by which it was created is frequently applied to determine the situs of personal property of a corporation for purposes of taxation, in the construction of the terms "resident" and "non-resident" in the bankruptcy and attachment laws, and in many other situations. See Hamilton v. North Pac. S.S. Co., 84 Or. 71, 164 P. 579. A corporation is a "resident property owner" within the meaning of a statute authorizing a majority of such owners to bring suit in equity for severance of territory from a town, Pittsburgh-Des Moines Steel Co. v. Incorporated Town of Clive, 249 Iowa 1346, 91 N.W.2d 602. It is a "citizen" of the United States under a statute conferring upon such citizens the right to purchase land excepted from a railroad grant, Ramsey v. Tacoma Land Co., 196 U.S. 360, 25 S.Ct. 286, 49 L.Ed. 513. It is a "citizen" entitled to locate mining claims under the laws of the United States, McKinley v. Wheeler, 130 U.S. 630, 9 S.Ct. 638, 32 L.Ed. 1048, and is entitled to the benefit of the Indian Depredation Acts, United States v. Northwestern Express, Stage & Transportation Company, 164 U.S. 686, 17 S.Ct. 206, 41 L.Ed. 599. It is a "resident" within the meaning of a substitute-service statute, State ex rel. Northwestern Mut. Fire Ass'n v. Cook, 1942, 349 Mo. 225, 160 S.W.2d 687, 689; a statute giving a resident taxpayer the option to appeal from final assessments made by the department of revenue to the circuit court of Montgomery County or of the county of the taxpayer's residence, Ex parte State ex rel. Lawson, 1941, 241 Ala. 304, 2 So.2d 765; a statute giving preference to "resident" bidders, Dictaphone Corporation v. O'Leary, 1941, 262 App. Div. 359, 29 N.Y.S.2d 352; and a statute requiring the signatures of a certain number of "resident owners" on a petition to improve a street, Kimmerle v. City of Topeka, 1912, 88 Kan. 370, 128 P. 367, 368.
The cases holding that a corporation is not a "citizen" or a "resident" within the meaning of a particular constitutional or statutory provision are few in number and can be distinguished. Thus, it is well settled that a corporation is not a "citizen" within the privileges and immunities clause of Section 2, Article 4, and the Fourteenth Amendment to the United States Constitution. This ruling is required by the fact that a corporation owes its existence to and derives all its powers from the state of its incorporation through its corporate charter. Since the privileges and immunities protected by the Fourteenth Amendment "are only those which owe their existence to the federal government, its national character, its Constitution, or its laws, and not such rights as accrue from state citizenship," 16A C.J.S. Constitutional Law § 458, page 169, it is plain that this particular clause of the Fourteenth Amendment is not  as it cannot be  applicable to a corporation. (It is noted, parenthetically, that a corporation is entitled to the protection of the due-process and equal-protection clauses of the Fourteenth Amendment. Grosjean v. American Press Company, 1935, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660, 661.) Similarly, Section 2 of Article 4 providing that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States" cannot be applied to corporations because an artificial person such as a corporation has no fundamental privileges and immunities; it has only such special privileges as are expressly granted to it by the state of its incorporation through its Charter. As noted in the early case of Paul v. Virginia, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1868):
"If, on the other hand, the provision of the Constitution could be construed to secure to citizens of each state in other States the peculiar privileges conferred by their laws, an extra territorial operation would be given to local legislation utterly destructive of the independence and the harmony of the state."
As noted above, there are very few decisions holding that a corporation is not *581 a "person" or a "resident" within the meaning of state statutes, and these holdings were required by the subject matter of the statute. Thus, in People ex rel. Fleischmann Mfg. Co. v. Marenus, 134 App.Div. 170, 118 N.Y.S. 838 (1909), it was held that a corporation was not a "person" within the meaning of a statute providing that land lying in one body, though situated in two or more school districts, is only to be assessed in the district where the occupant resides where it is "occupied by the same person." The court noted that it was fair and just that a person residing in and sending his children to school in one district should be assessed and pay taxes in the district in which he resides and said that the statute plainly intended the "occupant" to be a person, "some one who may have children to send to school."
In the light of the history of and the circumstances under which constitutional provision in question was adopted, and the fact that, except for the privileges and immunities clauses of the Fourteenth Amendment and Section 2, Article 4, of the federal constitution, it is held almost without exception that a corporation is a citizen or resident within the meaning of statutes applicable thereto, we can conclude only that the framers and adopters of the provision here involved intended in 1924, and again in 1930, and again in 1968, that the "residents or citizens of the state" referred to therein included artificial as well as natural persons, and that corporations as well as natural persons are entitled to the protection of Section 5, Article VII, Constitution of Florida (1968) as aforementioned.
Having thus interpreted the words "residents" or "citizens" as therein used, we do not deem it necessary or appropriate to discuss the other questions presented.
As authorized in our interlocutory order, various "interested persons" appeared, filed briefs, and presented oral arguments in support of their various positions. We take this opportunity, by your leave, Sir, to publicly express our appreciation to all of them for the contributions they made.
 Respectfully,
 B.K. ROBERTS
 Chief Justice
 VASSAR B. CARLTON
 JAMES ADKINS Jr.
 JOSEPH A. BOYD Jr.
 DAVID L. McCAIN
 HAL P. DEKLE
 Justices
A contrary point of view by Justice RICHARD ERVIN.
You have asked us whether Section 5, Article VII, of the Florida Constitution prohibits corporate income taxes. I find it does not.
Florida's constitution is not a granting instrument; rather, it, like all state constitutions, merely limits the sovereign powers of the state. Fowler v. Turner, 1945, 157 Fla. 529, 26 So.2d 792. Any limitation must be express and unambiguous, however, for it is a "fundamental principle that `the terms of an organic provision will not be strained to imply a limitation upon the lawmaking power.'" Hall v. Strickland, Fla. 1964, 170 So.2d 827, 831.
Traditionally, the ability to impose taxes has been an inherent power of lawmakers. Gaulden v. Kirk, Fla. 1950, 47 So.2d 567. It is an essential power, for without it the state cannot raise needed revenue. A poor tax base is the prelude to a poor state, generating a disgruntled citizenry smarting under tax base unfairness, usually in the form of excessive consumer excises, and a lack of sufficient tax revenue to provide governmental services essential to the needs of modern society.
*582 The taxing power is generally unrestricted. As early as 1874, the Florida Supreme Court recognized:
"[T]hat as to the State governments there is no limitation upon the power of the Legislature as to the amount or objects of taxation; that the interest, wisdom, and justice of the legislative body, and * * * its relation with its constituents, furnish the only security against unjust and excessive taxation, unless there be express restrictions upon that power in the Constitution." Cheney v. Jones, 1874, 14 Fla. 587, 610.
The constitutional provision which we must interpret provides:
"No tax upon estates or inheritances or upon the income of residents or citizens of the state shall be levied by the state, or under its authority, in excess of the aggregate of amounts which may be allowed to be credited upon or deducted from any similar tax levied by the United States or any state." (Fla. Const. Art. VII, § 5.)
The section obviously imposes limitations on the Legislature's taxing ability; however, this Court must be exceedingly careful in determining how extensive that limitation is. For "the power to tax must be given a practical construction which will not unduly restrict the governmental taxing power." City of DeLand v. Florida Public Service Co., 1935, 119 Fla. 804, 161 So. 735, 738.
Section 5, Article VII only prohibits the Florida Legislature from levying three types of taxes  estate, inheritance, or income  upon two designated classifications  residents or citizens of Florida  "in excess of the aggregate of amounts which may be allowed to be credited upon or deducted from any similar tax levied by the United States or any state."
Since you ask whether the Legislature may enact a corporate income tax, the question to be answered by this Court is whether a corporation can be considered a "citizen" or "resident" of Florida for the purposes of this prohibitory section.
Unquestionably, corporations have been classified as citizens and residents for some state purposes. We have held corporations are citizens and residents under laws defining court jurisdiction "if the purpose of the law renders it applicable." Kathleen Citrus Land Co. v. City of Lakeland, 1936, 124 Fla. 659, 169 So. 356, 358. And "the guarantees of due process of law and of equal protection of the law contained in the fourteenth amendment are expressly applicable to the states, and protect corporations as well as individual persons." Dutton Phosphate Co. v. Priest, 1914, 67 Fla. 370, 65 So. 282, 284.
However, corporations have been denied citizenship status for purposes of the privilege and immunity clause of the Federal Constitution. Adams v. American Agricultural Chemical Co., 1919, 78 Fla. 362, 82 So. 850; Asbury Hospital v. Cass County, 1945, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6.
The test generally of whether a corporation is to be treated as a citizen "depends upon the intent to be gathered from the context and the general purpose of the whole legislation in which it occurs." Swiss National Insurance Co. v. Miller, 1925, 267 U.S. 42, 46, 45 S.Ct. 213, 214, 69 L.Ed. 504. To determine whether the people of the state of Florida intended to prohibit corporate income taxes, we must examine not only Section 5, Article VII, of the 1968 Constitution, but also Section 11, Article IX, of the 1885 Constitution, as originally added in 1924 and amended in 1930. A close look at Section 11, Article IX is necessary because it was from that section that the present Section 5, Article VII was taken with little change in wording.
This Court has held that:
"The first and fundamental rule in the interpretation of a constitution is to construe it according to the sense of the *583 terms and the intention of the framers of such constitution and the people who adopted it." State ex rel. West v. Gray, Fla. 1954, 74 So.2d 114, 116.
Evidence shows an awareness in the 1920's of a distinction between natural and artificial persons. At the time of its 1924 amendment, the Taxation and Finance Article of the Florida Constitution (Article IX) contained several phrases which support this position. Section 8 said: "No person or corporation shall be relieved by any court from the payment of any tax that may be illegal, or illegally or irregularly assessed, until he or it shall have paid such portion of his or its taxes as may be legal, and legally and regularly assessed." (Emphasis supplied.) And Section 10 stated: "The credit of the State shall not be pledged or loaned to any individual, company, corporation or association * * *" (Emphasis supplied.) The language of Section 9 showed clearly that "residents," for the purpose of that section at least, had to be natural persons since the section provided:
"There shall be exempt from taxation property to the value of five hundred dollars to every widow and to every person who is a bona fide resident of the State and has lost a limb or been disabled in war or by misfortune."
That the mid-20's definition of "resident" did not usually include corporations is indicated in a contemporaneous decision of a New York court which stated that "the word `resident' occurring in the Constitution or a statute ordinarily means an individual or citizen, and does not mean a corporation." Wachtel v. Diamond State Engineering Corp., Sup.Ct. 1925, 215 App.Div. 15, 213 N.Y.S. 77, 78.
The words "resident" and "citizen" plainly bring to mind only natural persons. Furthermore, this is the meaning uniformly intended when such words only are used in the Florida Constitution providing for exemptions, exceptions, or prohibitions from certain taxes or taxing powers.
Keeping this plain meaning of these words and general understanding of them in mind, I find it impossible to believe the framers of the 1924 amendment and the people who adopted it intended "residents" and "citizens" to refer to anything other than natural persons, or that these words latently embodied corporations and other artificial entities within their scope. Constitution provisions limiting legislative power and particularly those granting tax exemptions and benefits are subject to strict construction. It has long been the rule that the judiciary would not hobble or limit the legislative branch unless clearly and unmistakable constitutional language required it. Particularly has this been the case in regard to legislative taxing power which may need to be expanded or contracted, depending upon changing times and the needs of the state. Strait-jacketing legislative power by narrowly limiting and restricting its authority through constitutional interpretation fails to consider the needs of a growing state and its progressive potentials. Moreover, judicial interpretation of a constitutional provision confining taxation primarily to incomes of consumers without equitable balance shifting some of the burden to other tax sources is regressive and contrary to the constitutional concept that taxation should have some substantial relation to the ability to pay.
It must be assumed that the same intention was present in 1968 since there is no indication to the contrary and the language is virtually identical. According to the Florida Statutes Annotated commentary on Section 5, Article VII, "this section reproduces the substance of Article IX, Section 11 of the 1885 Constitution as amended." (Emphasis supplied.) This position is further substantiated by the fact that a proposed amendment to the section calling for the substitution of "persons or corporations within" in place of "residents or citizens" did not get past the floor of the House. House Jour. 41st Legis., Spec. Sess. 6/24-7/3/68, at p. 11.
*584 Not only do the words "residents and citizens" themselves suggest natural persons, but when read in conjunction with other words in Section 5 and in other sections granting exceptions and exemptions in Article VII, the implication is even stronger. This Court recognizes the doctrine of constitutional construction known as noscitur a sociis, which permits reference to accompanying words as a means of determining the definition of a specific word. Dunham v. State, 1939, 140 Fla. 754, 192 So. 324.
The section begins by listing three types of taxes: estate, inheritance and income. Obviously the prohibition against estate and inheritance taxes applies only to natural persons. From this it also may be assumed that the prohibition against income taxes is to apply only to natural persons.
The precise question you have submitted has never before been answered by this Court in any case or advisory request where it was directly in issue or directly posed. The statement in Volusia County Kennel Club, Inc. v. Haggard, Fla. 1954, 73 So.2d 884, indicating a negative answer was gratuitous obiter dictum.
It would not be unequal protection to corporations to impose a corporate income tax because as hereinbefore indicated a corporation is not a "citizen" within the privileges and immunities clause of Section 2, Article IV and the 14th Amendment to the United States Constitution. Furthermore, it has been generally held that corporations may be classed separately for purposes of taxation. See 51 Am.Jur. 747 in relation to the subject of taxing corporate income.
I would point out in conclusion that the briefs of the Attorney General and of the Speaker of the House of Representatives, submitted to us concerning the question  briefs on behalf of the public  clearly and forcibly demonstrate that the language used in the constitutional prohibition does not apply to corporations. They cite historical data and numerous citations supportive of the proposition that such was not the intended effect of the provision when submitted as an amendment to the 1885 Constitution in 1924, and that limiting language in a constitution upon legislative taxing power referring to citizens or residents should not be extended by implication to corporations. It would unduly lengthen this opinion to incorporate the material included in those public briefs  but attention is drawn to them particularly as reference sources, i.e., historical data and legal research which in the long reach of time will on inspection convince interested persons and thoughtful students in the future that a negative answer to your question was the correct one.
 Respectfully submitted,
 RICHARD W. ERVIN
 Justice.